**2020 WI App 17**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

| Case Nos.: | 2019AP2397 |
| --- | --- |
| | 2020AP112 |

†Petition for Review Filed

Complete Title of Case:

STATE OF WISCONSIN EX REL. TIMOTHY ZIGNEGO, DAVID W. OPITZ AND FREDERICK G. LUEHRS, III,

    PLAINTIFFS-RESPONDENTS,†

    V.

WISCONSIN ELECTIONS COMMISSION, MARGE BOSTELMANN, JULIE GLANCEY, ANN JACOBS, DEAN KNUDSEN AND MARK THOMSEN,

    DEFENDANTS-APPELLANTS.

| Opinion Filed: | February 28, 2020 |
| --- | --- |
| Submitted on Briefs: | February 21, 2020 |

| JUDGES: | Fitzpatrick, P.J., Kloppenburg and Nashold, JJ. |
| --- | --- |
|     Concurred: | |
|     Dissented: | |

| Appellant ATTORNEYS: | On behalf of the defendants-appellants, the cause was submitted on the briefs of *Karla Z. Keckhaver, Steven C. Kilpatrick* and *Colin T. Roth*, assistant attorneys general, and *Joshua L. Kaul*, attorney general. |
| --- | --- |
| Respondent ATTORNEYS: | On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Richard M. Esenberg, Brian McGrath, Anthony LoCoco* and *Lucas T. Vebber* of *Wisconsin Institute for Law & Liberty*, Milwaukee. |

A nonparty brief was filed on behalf of Felicia Ellzey, Marangelly Quintana Feliciano, Jennifer Hagen & SEIU Wisconsin State Council by *Jeffrey A. Mandell* and *Kurt M. Simatic* of *Stafford Rosenbaum LLP*, Madison, and *Stacie H. Rosenzweig* of *Halling & Cayo, S.C.*, Milwaukee.

# 2020 WI App 17

COURT OF APPEALS
DECISION
DATED AND FILED

February 28, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2019AP2397**
**2020AP112**

Cir. Ct. No. 2019CV449

STATE OF WISCONSIN

IN COURT OF APPEALS

---

STATE OF WISCONSIN EX REL. TIMOTHY ZIGNEGO, DAVID W. OPITZ AND FREDERICK G. LUEHRS, III,

PLAINTIFFS-RESPONDENTS,

V.

WISCONSIN ELECTIONS COMMISSION, MARGE BOSTELMANN, JULIE GLANCEY, ANN JACOBS, DEAN KNUDSEN AND MARK THOMSEN,

DEFENDANTS-APPELLANTS.

---

APPEALS from orders of the circuit court for Ozaukee County: PAUL V. MALLOY, Judge. *Reversed and cause remanded with directions*.

Before Fitzpatrick, P.J., Kloppenburg and Nashold, JJ.

¶1    FITZPATRICK, P.J.   The respondents in this appeal, who were the plaintiffs in the circuit court, are three Wisconsin taxpayers and registered voters.[1] The appellants are the Wisconsin Elections Commission and five of its six individual commissioners.[2]  Plaintiffs brought suit against the Commission in the Ozaukee County Circuit Court alleging that the Commission failed to comply with a particular election law.[3]  The circuit court agreed with Plaintiffs and granted a writ of mandamus ordering the Commission to "comply with the provisions of [WIS. STAT.] § 6.50(3) and deactivate the registrations" of thousands of electors in the State of Wisconsin.[4]  The circuit court later found the Commission, and three of its individual commissioners, in contempt of court for failure to comply with the court's writ of mandamus.

---

[1] For ease of reference, we will generally refer to those persons as "Plaintiffs."

[2] We will generally refer to the appellants collectively as the "Commission" consistent with the designation given to the Commission by the legislature in the applicable Wisconsin Statutes which we will discuss. *See* WIS. STAT. § 5.025 (2017-18).

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[3] For convenience, we generally refer to WIS. STAT. chs. 5 to 10 and 12 as the "election laws." *See* WIS. STAT. §§ 5.01(2) and 5.05(1).

[4] The applicable election laws, including WIS. STAT. § 6.50(3), refer to the term "elector." We sometimes use the term "voter" consistent with the submissions of the parties.  The parties do not contend that there is any material difference in the use of the words "voter" and "elector" in this context.

In addition, the circuit court's writ of mandamus required the Commission to "deactivate" the registrations of various electors.  However, the term "deactivate" does not appear in the election laws.  Rather, the applicable election laws, including WIS. STAT. § 6.50(3), refer to this action as changing an "elector's registration" from "eligible" to "ineligible status."  We sometimes adopt the parties' and the circuit court's use of the word "deactivate" because the parties do not contend that there is any material difference in the use of those terms in this context.

¶2      The Commission appealed both the writ of mandamus and the contempt order in separate appeals. In orders dated January 14, 2020, this court: (1) stayed the circuit court's writ of mandamus against the Commission; and (2) stayed the circuit court's order for contempt which was based on the Commission's failure to comply with the writ of mandamus.[5] We entered those stay orders after the Wisconsin Supreme Court denied Plaintiffs' Petition to Bypass the Court of Appeals. *See* WIS. STAT. RULE 809.60. This court set an expedited briefing schedule for this appeal with the final brief filed on February 19, 2020.

¶3      The explicit basis for the circuit court's writ of mandamus, and a necessary premise for Plaintiffs' arguments, is that the Commission has statutory duties pursuant to WIS. STAT. § 6.50(3).[6] We reject Plaintiffs' arguments, and

---

[5] By order dated January 17, 2020, case No. 2020AP112 (the appeal of the contempt order) was consolidated with case No. 2019AP2397 (the appeal of the writ of mandamus) for purposes of briefing and disposition.

Separately, we note that this appeal is assigned to this district pursuant to WIS. STAT. § 752.21(2).

[6] That statutory subpart provides in relevant part:

> Upon receipt of reliable information that a registered elector has changed his or her residence to a location outside of the municipality, the municipal clerk or board of election commissioners shall notify the elector by mailing a notice by 1st class mail to the elector's registration address stating the source of the information. All municipal departments and agencies receiving information that a registered elector has changed his or her residence shall notify the clerk or board of election commissioners. If the elector no longer resides in the municipality or fails to apply for continuation of registration within 30 days of the date the notice is mailed, the clerk or board of election commissioners shall change the elector's registration from eligible to ineligible status. Upon receipt of reliable information that a registered elector has changed his or her residence within the municipality, the municipal clerk or board of election

reverse the writ of mandamus entered by the circuit court, because the plain language of § 6.50(3) neither refers to the Commission nor places any duties on the Commission. Among the many reasons discussed in this opinion that mandate this conclusion are the following:

- The legislature has stated in very clear wording that the Wisconsin Elections Commission, a state agency, is referred to in the election laws as the "commission." Specifically, WIS. STAT. § 5.025 states: "In [WIS. STAT.] chs. 5 to 10 and 12, 'commission' means the elections commission."

- WISCONSIN STAT. § 6.50(3) makes no reference to the "commission" and only refers to "the municipal clerk or board of election commissioners" as the governmental bodies that have statutory duties pursuant to that statutory subpart.

- Pursuant to WIS. STAT. § 7.20, a "board of election commissioners" was established by the legislature in the City of Milwaukee, and that board is a municipal governmental body.[7]

---

commissioners shall change the elector's registration and mail the elector a notice of the change.

WIS. STAT. § 6.50(3).

[7] The Commission contends, and Plaintiffs do not dispute, that there is only one municipal "board of election commissioners" in this state; that board is the City of Milwaukee Board of Election Commissioners. It appears from the record that there is also a Milwaukee County Board of Election Commissioners. The parties do not refer to the Milwaukee County Board of Election Commissioners in briefing in this court, and the parties do not contend that the existence of that board is pertinent to our analysis. Accordingly, we do not mention it further with one exception discussed later in this opinion.

4

- The Commission and the "board of election commissioners" are separate and distinct governmental entities established by the Wisconsin legislature with separate and distinct duties concerning the election laws.

- The legislature refers to the Wisconsin Elections Commission more than 100 times as the "commission" in the election laws. The legislature separately refers to the board of election commissioners as only the "board of election commissioners" more than 100 times in the election laws. The plain language of the election laws does not support Plaintiffs' contention that the legislature meant to refer to the Commission as a "board of election commissioners" in only one statutory subpart, § 6.50(3), out of numerous election law statutes.

- The Commission is an independent agency of the executive branch and is not a "board" as that term is defined and employed in the Wisconsin Statutes. Rather, it is a "commission" as that term is defined and employed in the Wisconsin Statutes. Thus, the reference to a "*board* of election commissioners" in § 6.50(3) necessarily excludes the Commission.

- In interpreting the Wisconsin Statutes, courts may not rewrite the plain language of the statutes the legislature has enacted. Acceptance of the arguments of Plaintiffs would cause us to rewrite statutes enacted by the legislature, and that we cannot do.

¶4    We also vacate the circuit court's contempt order because of our reversal of the writ of mandamus. We further reject Plaintiffs' request to construe the contempt order to allow for monetary sanctions against the Commission and three of its individual commissioners for the less-than-24-hour period between the issuance of the contempt order and our stay of that order.

**BACKGROUND**

¶5     The following material facts are not disputed on appeal.

¶6     Plaintiffs, Timothy Zignego, David Opitz, and Frederick Luehrs, III, are Wisconsin taxpayers and registered voters who reside, respectively, in Washington, Ozaukee, and Waukesha counties. The Commission is an independent agency of this state's executive branch responsible for the administration of the election laws in this state. WIS. STAT. §§ 5.05(1) and (2w) and 15.61.

¶7     In 2015, the legislature enacted a statutory subpart directing the Commission to enter into a membership agreement with the Electronic Registration Information Center, Inc. (the parties refer to this corporation as "ERIC," and we will do the same) and to comply with the terms of that agreement. *See* WIS. STAT. § 6.36(1)(ae); 2015 Wis. Act 261, § 55.

¶8     ERIC is a nonprofit corporation that shares data about voters to help its member states improve what the ERIC membership agreement refers to as "the accuracies and efficiencies" of "voter registration systems." ERIC strives to help its member states identify persons who may be eligible to vote but are not registered, voters who may have moved their residences since their last voter registrations, and voters who are deceased. In order to meet these objectives, ERIC compares data about registered voters with information from other sources, including the Division of Motor Vehicles and the United States Postal Service.

¶9     The ERIC membership agreement requires that each member state initiate contact with voters who may have inaccurate registrations. While the ERIC membership agreement requires each member state to contact such voters, that agreement does not require removal of any person from a voter registration list, any

6

change in a voter's registration status, or any process or time frame for such activities.

¶10 Every two years, the Commission receives a report from ERIC regarding "Movers." "Movers," in the context of this case, are Wisconsin residents who, as reported by ERIC, have in interactions with government agencies stated an address different from their voter registration address, thus indicating that they may have moved.

¶11 In October 2017, ERIC provided to the Commission data identifying 341,855 registered Wisconsin electors as "Movers." After receiving this report, the Commission mailed a postcard to each of those electors who may have moved as alleged by ERIC. The Commission directed each elector to reregister if the elector had moved, or to sign and return the postcard to the elector's municipal clerk or board of election commissioners in order to keep the elector's registration current. In the mailing, the Commission stated that the elector had thirty days in which to respond in order to keep the elector's voter registration active.

¶12 Commission staff compiled statistics on the 2017 ERIC Movers data. As reported by the Commission, of the 341,855 individuals flagged by ERIC as Movers, 160,863 (47%) updated their voter registrations, 134,517 (39%) had their registrations deactivated by the Commission based on non-response to the October 2017 mailing and remained deactivated,[8] and 46,475 (14%) remained with active registrations at their original addresses.

---

[8] As we discuss below at ¶90, we conclude that there was no statutory authority for this deactivation of electors' registrations by the Commission.

¶13 Based on its experience with the 2017 Movers mailing, the Commission learned that a portion of the ERIC-provided data did not accurately indicate whether an elector had changed, or intended to change, his or her residence address for purposes of his or her voter registration (referred to in WIS. STAT. § 6.10 as the "elector residence"). As one of many examples, the Commission learned that some electors whom ERIC denominated as Movers had registered a vehicle or obtained a driver license at an address other than the elector's voting address and did not intend to change the elector's voting address. Further, the erroneous deactivation of some elector registrations by the Commission because of non-response to the October 2017 mailing caused what the Commission's administrator described as "problems" during the 2018 elections and resulted in the Commission reactivating the registrations of electors who were deactivated in error. Some Wisconsin municipalities chose not to rely on the 2017 Mover data because the municipalities did not consider the ERIC-provided Mover data sufficiently dependable so as to deactivate the registration of a voter. For example, the City of Milwaukee, the City of Green Bay, and the Village of Hobart requested reactivation of the registrations of all of the more than 38,000 ERIC Movers in their jurisdictions who had their voter registrations deactivated by the Commission.

¶14 In 2019, the Commission received another report from ERIC regarding purported Movers. Based on the Commission's experience with the 2017 Movers data, the Commission revised its planned actions based on the 2019 ERIC Movers data. In October 2019, the Commission sent a letter to each of the approximately 230,000 purported Movers asking each elector to affirm whether the elector still lived at that address. The letter stated that, if the elector affirmed that he or she had not moved, then the elector remained in active status with his or her

8

voter registration at that address. The Commission's letter did not include notice that the elector's voter registration would be deactivated if he or she did not respond.

¶15 The Commission decided that it would take no immediate action regarding the electors who did not respond to the October 2019 mailing but, rather, would seek guidance from the legislature regarding further action. At the Commission's request, Commission staff submitted a memorandum addressing "options for clarifying the legal authority for, and/or seeking more specific legal authority related to, the treatment of voter registration records of those individuals included on the ERIC Movers list." The Commission subsequently passed the following motion at its meeting on December 2, 2019: "The Commission directs staff to pursue legislation establishing specific procedures governing the ERIC Movers mailing and/or granting rulemaking authority to the Commission."

¶16 In October 2019, Plaintiffs filed a complaint with the Commission.[9] About ten days later, the Commission dismissed the administrative complaint. The administrative complaint is not in the record, and Plaintiffs tell us only that the administrative complaint asked the Commission to "follow state law."

¶17 In November 2019, Plaintiffs filed this lawsuit in the circuit court against the Commission and five of its six commissioners in their official capacities. Plaintiffs alleged in their complaint that the Commission violated WIS. STAT. § 6.50(3) by not deactivating the registrations of those electors who did not respond to the October 2019 mailing within 30 days of the date of the mailing. On that cause of action, Plaintiffs sought declaratory and injunctive relief or, in the alternative, a writ of mandamus. Plaintiffs' second cause of action in their complaint alleged that

---

[9] We will refer to this filing as the "administrative complaint."

the Commission violated WIS. STAT. § 227.10 because the Commission adopted a policy not to enforce § 6.50(3) without passing a formal administrative rule. On that cause of action, Plaintiffs sought declaratory relief.

¶18 On December 13, 2019, the circuit court granted Plaintiffs' request for a writ of mandamus. The court ordered the Commission "to comply with the provisions of [WIS. STAT.] § 6.50(3) and deactivate the registrations of those electors who have failed to apply for continuation of their registration within 30 days of the date the notice was mailed under that provision." The circuit court denied the Commission's request for a stay of the writ of mandamus pending appeal. The Commission appealed, and this court held the Commission's request for a stay pending appeal in abeyance while the supreme court considered Plaintiffs' Petition to Bypass, which was filed during the filing of submissions in this court regarding the Commission's request for a stay.

¶19 On January 13, 2020, at Plaintiffs' request, the circuit court found the Commission and three of its commissioners in contempt of court and entered a contempt order imposing a remedial sanction of $250 per day against the three commissioners and $50 per day against the Commission until the Commission complied with the writ of mandamus. That same day, the Commission filed an appeal of the contempt order in this court. During the evening of January 13, 2020, the supreme court denied Plaintiffs' Petition to Bypass.

¶20 Mid-morning on January 14, 2020, this court granted the Commission's motion to stay both the writ of mandamus entered on December 13, 2019, and the contempt order entered on January 13, 2020.

¶21 We will mention other material facts in the following Discussion.

10

**DISCUSSION**

¶22    We first review the circuit court's grant of a writ of mandamus, and we then review the circuit court's contempt order.

### I.  Writ of Mandamus.

### A.  Plaintiffs' Standing.

¶23    As an initial matter, the Commission contends that we must reverse the circuit court's writ of mandamus because Plaintiffs did not have standing to bring this lawsuit against the Commission.  Whether a party has standing to initiate a lawsuit is a question of law that we review de novo.  *McConkey v. Van Hollen*, 2010 WI 57, ¶12, 326 Wis. 2d 1, 783 N.W.2d 855.  Standing in Wisconsin is not a matter of jurisdiction, but of sound judicial policy.  *Id.*, ¶15.

¶24    The Commission argues that Plaintiffs do not have standing because Plaintiffs are "not injured in fact" and are not within the "zone of interest" protected or regulated by the statutes at issue in this case.  *See Milwaukee Deputy Sheriff's Ass'n v. City of Wauwatosa*, 2010 WI App 95, ¶31, 327 Wis. 2d 206, 787 N.W.2d 438.  Plaintiffs alleged in their complaint that they have standing because the Commission was "spending taxpayer money on illegal activities which causes pecuniary harm to the [P]laintiffs."  But, Plaintiffs do not make that standing argument in their briefing in this court.  Plaintiffs' complaint also alleged that they are "aggrieved parties" under WIS. STAT. § 227.40 because the Commission allegedly failed to comply with applicable rule-making procedures.  However, Plaintiffs do not contend in their briefing in this court that their alleged "aggrieved part[y]" status gives them standing.  Plaintiffs have made no argument in their

11

briefing in this court that they have incurred an injury in fact or are in the zone of interest protected or regulated by the statutes in dispute.

¶25 The Commission also argues that Plaintiffs do not have standing because Plaintiffs did not comply with the provisions of WIS. STAT. § 5.06(1), (2), (8) and (9) prior to initiating suit in the circuit court.[10] Plaintiffs make no argument in their briefing before us to rebut the Commission's contention that Plaintiffs do not have standing under the provisions of § 5.06. Rather, Plaintiffs only reference the administrative complaint filed with the Commission in their briefing in this court without any accompanying argument.

¶26 In sum, Plaintiffs have not made any discernible argument in their briefing in this court on the question of standing. However, "[t]he law of standing in Wisconsin is construed liberally, and 'even an injury to a trifling interest' may suffice." *McConkey*, 326 Wis. 2d 1, ¶15 (quoted source omitted). Further, Plaintiffs brought their complaint, in part, as a request for declaratory judgment. When suit is brought pursuant to the declaratory judgment statute, WIS. STAT. § 806.04(2), Wisconsin courts are to "liberally … afford[] relief from an uncertain infringement of a party's rights." *Town of Eagle v. Christensen*, 191 Wis. 2d 301, 316, 529 N.W.2d 245 (Ct. App. 1995).

¶27 In light of the truncated arguments of the parties and our reversal of the circuit court's writ of mandamus on other grounds, we decline to decide the

---

[10] These statutory subparts concern standards and procedures that the Commission is required to use when an administrative complaint is filed with the Commission alleging that an individual charged with duties relating to the conduct of an election has failed to perform those duties, and the standards and procedures that must be used in the circuit court in the appeal of the Commission's decision regarding an administrative complaint. *See* WIS. STAT. §§ 5.02(4e); 5.06(1), (2), (8) and (9). Plaintiffs make no argument in the briefing in this court that they sought an appeal in the circuit court of the Commission's denial of their administrative complaint.

standing issue. Instead we assume, without deciding, that Plaintiffs have standing to bring their complaint in the circuit court.

¶28    We now turn to the applicable authorities concerning the writ of mandamus, our standard of review, and the interpretation of statutes.

## B. Applicable Authorities.

### 1. Prerequisites for a Writ of Mandamus.

¶29    This appeal requires us to review the circuit court's grant of a writ of mandamus. A writ of mandamus is "an extraordinary legal remedy." *Lake Bluff Housing Partners v. City of S. Milwaukee*, 197 Wis. 2d 157, 170, 540 N.W.2d 189 (1995). The writ "may be used to compel public officers to perform duties arising out of their office and presently due to be performed." *Pasko v. City of Milwaukee*, 2002 WI 33, ¶24, 252 Wis. 2d 1, 643 N.W.2d 72 (quoted source and internal quotation marks omitted).

¶30    For a writ of mandamus to be properly issued, Plaintiffs must show that each of the following four prerequisites are satisfied: (1) "the writ is based on a 'clear, specific legal right which is free from substantial doubt'"; (2) the alleged duty of the Commission must be "positive and plain"; (3) the Plaintiffs will be "substantially damaged" by nonperformance of the Commission's purported duty; and (4) there is no other adequate remedy at law for the Plaintiffs. *Lake Bluff Housing Partners*, 197 Wis. 2d at 170; *Burns v. City of Madison*, 92 Wis. 2d 232, 243, 284 N.W.2d 631 (1979).

¶31    Here, the parties focus on whether Plaintiffs have shown that the language enacted by the legislature in WIS. STAT. § 6.50(3) imposes a duty on the

13

Commission that is "positive and plain." Because that question is dispositive, we do the same.

## 2. Standard of Review Regarding Writ of Mandamus.

¶32    We will uphold a circuit court's grant or denial of a writ of mandamus unless the circuit court erroneously exercised its discretion. *Lake Bluff Housing Partners*, 197 Wis. 2d at 170; *see also Miller v. Smith*, 100 Wis. 2d 609, 621, 302 N.W.2d 468 (1981); *State ex rel. Kurkierewicz v. Cannon*, 42 Wis. 2d 368, 375-76, 166 N.W.2d 255 (1969). A circuit court's "discretion in issuing a writ of mandamus is erroneously exercised if based on an erroneous understanding of the law." *Lake Bluff Housing Partners*, 197 Wis. 2d at 170 (citing *State ex rel. Althouse v. City of Madison*, 79 Wis. 2d 97, 106, 255 N.W.2d 449 (1977)). When a circuit court order interprets Wisconsin Statutes, including in a writ of mandamus, we interpret the statutes independently of the circuit court's analysis. *See Pasko*, 252 Wis. 2d 1, ¶23; *Watton v. Hegerty*, 2008 WI 74, ¶6, 311 Wis. 2d 52, 751 N.W.2d 369; *LeMere v. LeMere*, 2003 WI 67, ¶14, 262 Wis. 2d 426, 663 N.W.2d 789 ("We decide 'any questions of law which may arise during our review of an exercise of discretion independently of the circuit court ….'" (quoted source omitted)). *See also League of Women Voters of Wis. v. Evers*, No. 2019AP559, unpublished op. and order, at ¶7 & n.8 (WI Apr. 30, 2019).

¶33    Further, our supreme court instructs that "'[i]t is an [erroneous exercise] of discretion to compel action through mandamus when the duty is not clear and unequivocal and requires the exercise of discretion.'" *Law Enforcement Standards Bd. v. Village of Lyndon Station*, 101 Wis. 2d 472, 494, 305 N.W.2d 89 (1981) (quoted source omitted).

14

## 3. Interpretation of Statutes.

¶34  The parties' arguments require us to interpret statutes.  In interpreting statutes, Wisconsin courts begin "with the language of the statute.  If the meaning of the statute is plain, we ordinarily stop the inquiry." *State ex rel. Kalal v. Circuit Ct. for Dane Cty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source and internal quotation marks omitted).  "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.*; *see* WIS. STAT. § 990.01(1).  Our supreme court further notes:

> Context is important to meaning.  So, too, is the structure of the statute in which the operative language appears.  Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.

*Kalal*, 271 Wis. 2d 633, ¶46.

¶35  "[C]ourts should not add words to a statute to give it a certain meaning." *Fond du Lac Cty. v. Town of Rosendale*, 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App. 1989); *see Dawson v. Town of Jackson*, 2011 WI 77, ¶42, 336 Wis. 2d 318, 801 N.W.2d 316 ("We decline to read into the statute words the legislature did not see fit to write."); *State v. Wiedmeyer*, 2016 WI App 46, ¶13, 370 Wis. 2d 187, 881 N.W.2d 805 ("It is not up to the courts to rewrite the plain words of statutes ...").  "[R]ather, we interpret the words the legislature actually enacted into law." *State v. Fitzgerald*, 2019 WI 69, ¶30, 387 Wis. 2d 384, 929 N.W.2d 165. "'That is, a matter not covered is to be treated as not covered.'" *Enbridge Energy Co. v. Dane Cty.*, 2019 WI 78, ¶23, 387 Wis. 2d 687, 929 N.W.2d 572 (quoting

15

*State ex rel. Lopez-Quintero v. Dittmann*, 2019 WI 58, ¶18, 387 Wis. 2d 50, 928 N.W.2d 480).

¶36 Plaintiffs sometimes rely on what they assert is "legislative intent," but our supreme court has discarded the search for unenacted legislative intent as a permissible indicator of statutory meaning when the statutory language is unambiguous. *See Kalal*, 271 Wis. 2d 633, ¶44 ("It is the enacted law, not the unenacted intent, that is binding on the public."); *see also State v. Grandberry*, 2018 WI 29, ¶55, 380 Wis. 2d 541, 910 N.W.2d 214 (Kelly, J., concurring) ("[W]e give effect only to what the legislature does, not what it tried to do."); ANTONIN SCALIA & GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, 391-96 (2012) ("[C]ollective intent is pure fiction because dozens if not hundreds of legislators have their own subjective views on the minutiae of the bills they are voting on ….").

### C. Relevant Election Laws.

¶37 As noted, context is important in interpreting statutes; thus, statutory language must be interpreted in relation to surrounding and closely related statutes. *See Kalal*, 271 Wis. 2d 633, ¶46. We now consider the election laws that set forth the relevant statutorily prescribed duties and authority of the Commission, municipal clerks, and the board of election commissioners.

### 1. The Commission.

¶38 As noted, WIS. STAT. § 5.025 states the specific term the legislature indicates it will use in the election laws when the legislature refers to the Commission. "**Elections commission; definition.** In [WIS. STAT.] chs. 5 to 10 and

12, 'commission' means the elections commission." Sec. 5.025; *see also* WIS. STAT. § 12.01(2) ("'Commission' means the elections commission.").[11]

¶39 The Commission was created in 2015 by WIS. STAT. § 15.61, which provides in pertinent part the following regarding the appointment of its commissioners:

> **Elections commission; creation.**
>
> **(1)** (a) There is created an elections commission consisting of the following members who shall serve for 5-year terms:
>
> 1. One member appointed by the senate majority leader.
>
> 2. One member appointed by the senate minority leader.
>
> 3. One member appointed by the speaker of the assembly.
>
> 4. One member appointed by the assembly minority leader.
>
> 5. Two members who formerly served as county or municipal clerks and who are nominated by the governor ….

*See* 2015 Wis. Act 118, §§ 169-70.

¶40 WISCONSIN STAT. § 5.05(1) describes the authority of the Commission and states: "**Elections commission; powers and duties. (1)** GENERAL AUTHORITY. The elections commission shall have the responsibility for the administration of [WIS. STAT.] chs. 5 to 10 and 12 and other laws relating to

---

[11] We observe that, occasionally, the election laws refer to the Commission as the "elections commission." *See, e.g.,* WIS. STAT. §§ 5.05(2w) and 6.275(1)(f). However, Plaintiffs give us no reason to question the Commission's arguments in light of the wording of those statutory subparts.

elections and election campaigns, other than laws relating to campaign financing." Section 5.05(1)-(18) then sets forth select duties of the Commission.

¶41    In addition, WIS. STAT. ch. 7 is titled "**ELECTION OFFICIALS; BOARDS; SELECTION AND DUTIES; CANVASSING**."  WISCONSIN STAT. § 7.08 states in its introduction:  "**Elections commission.**  In addition to its duties for ballot arrangement under [WIS. STAT.] ch. 5 and date and notice requirements under [WIS. STAT.] ch. 10, the commission shall:" and that statute then sets out in § 7.08(1)-(12) further duties of the Commission.

## 2.  Municipal Clerks.

¶42    The term "municipal clerk" is used in WIS. STAT. § 6.50(3).  The legislature describes in the election laws the duties and authority of municipal clerks regarding Wisconsin elections.[12]  WISCONSIN STAT. § 7.15(1) states that "[e]ach municipal clerk has charge and supervision of elections and registration in the municipality."  Section 7.15(1)-(15) lists various duties of the municipal clerks concerning elections.

## 3.  Board of Election Commissioners.

¶43    Immediately following the statute concerning the election-related duties of municipal clerks, WIS. STAT. §§ 7.20-7.22 establish a municipal board of election commissioners and set out its duties and authority regarding Wisconsin elections.    Section 7.20(1) states in pertinent part:    "**Board of election**

---

[12] WISCONSIN STAT. § 5.02(10) defines "[m]unicipal clerk" as "the city clerk, town clerk, village clerk and the executive director of the city election commission and their authorized representatives."

18

**commissioners.** **(1)** A municipal board of election commissioners shall be established in every city over 500,000 population."

¶44    WISCONSIN STAT. § 7.20(2) provides that the commissioners on the "board of election commissioners" are appointed in a different manner as compared to the process for appointing commissioners for the Commission as described in ¶39, above.  That statutory subpart states in relevant part:

> **(2)** Each board of election commissioners shall consist of 3 members, each member being chosen from lists of at least 3 names each, selected and approved by the county committee of the 2 political parties … receiving the most votes for governor in the city in the case of the city board of election commissioners, in the last general election….  The mayor, for the city board of election commissioners, shall select from the list 2 persons from the majority party and one person from the next highest party in the city.

Sec. 7.20(2).  *See also* WIS. STAT. § 7.22 (concerning salaries and duties of municipal board of election commissioners).

¶45    WISCONSIN STAT. § 7.21(1) delineates the duties of the "board of election commissioners" and states in pertinent part:

> All powers and duties assigned to the municipal … clerk or the municipal … board of canvassers under [WIS. STAT.] chs. 5 to 12 shall be carried out by the municipal … board of election commissioners or its executive director, unless specifically retained or assigned in this section or [WIS. STAT. §] 7.22.

Pursuant to that subpart, the City of Milwaukee Board of Election Commissioners generally has the duties of a municipal clerk regarding elections in the City of Milwaukee.

#### 4. Process to Change an Elector's Registration Status in W<small>IS</small>. S<small>TAT</small>. § 6.50.

¶46    We now discuss the process to change an elector's registration status as directed by the legislature pursuant to W<small>IS</small>. S<small>TAT</small>. § 6.50.

¶47    W<small>ISCONSIN</small> S<small>TAT</small>. § 6.50(1)-(2r) describes the Commission's duties and authority regarding changes to an elector's registration status. These statutory subparts direct that, no later than June 15 after each general election, the Commission must identify each elector who has not voted in the previous four years if qualified to do so. The Commission then must mail a notice to the elector, informing the elector that his or her registration will be suspended on the basis of his or her failure to vote within the previous four-year period. Sec. 6.50(1). If the elector signs a statement contained with the notice and returns the notice to the elector's "municipal clerk or board of election commissioners," the voter's registration will be continued. *Id.* If the elector does not apply for continuation or registration within thirty days of the mailing, "the [C]ommission shall change the registration status of that elector from eligible to ineligible on the day that falls 30 days after the date of mailing." Sec. 6.50(2). The Commission "may delegate to a municipal clerk or board of election commissioners" the responsibility to change the registration of electors under sub. (2). Sec. 6.50(2g).

¶48    W<small>ISCONSIN</small> S<small>TAT</small>. § 6.50(3)-(8) describes the duties and authorities of "the municipal clerk or board of election commissioners" regarding changes to an elector's voter registration status. Of importance to interpreting § 6.50(3)-(8) is that, when a municipality has a "board of election commissioners," "all powers and duties assigned to" the municipal clerk are "carried out" by the board of election commissioners or the board's executive director. *See* W<small>IS</small>. S<small>TAT</small>. § 7.21(1) and ¶45, above.

20

¶49   WISCONSIN STAT. § 6.50(3) provides that "[u]pon receipt of reliable information that a registered elector has changed his or her residence to a location outside of the municipality, the municipal clerk or board of election commissioners shall notify the elector" by mailing a notice by first class mail to the elector's registration address stating the source of the information.  "If the elector no longer resides in the municipality or fails to apply for continuation of registration within 30 days of the date the notice is mailed," then the "clerk or board of election commissioners shall change the elector's registration from eligible to ineligible status." ***Id.***  The statute does not specify a date when the clerk or board must so act.  If the elector has changed his or her address but continues to reside within the municipality, the clerk or board of election commissioners must change the elector's registration and mail notice of that change to the elector.  ***Id.***[13]

¶50   The "municipal clerk or board of election commissioners" must change the registration of "deceased electors from eligible to ineligible status" based on a check of vital statistics reports.  WIS. STAT. § 6.50(4).  An elector whose address is listed as being at a place "condemned for human habitation by the municipality" will have his or her status changed to ineligible by the municipal clerk or board of election commissioners.  Sec. 6.50(5).  The "municipal clerk" has the authority to change a registration of an elector to "ineligible status" upon authorization of the elector.  Sec. 6.50(6).  Section 6.50(7) provides that either the Commission, "municipal clerk," or the "board of election commissioners" may

---

[13] There are provisions for an individual elector in a municipality (such as Plaintiffs) to challenge the registration of another elector in that municipality, and the "municipal clerk or board of election commissioners" shall change the status only if it is demonstrated "beyond a reasonable doubt that the person does not qualify as an elector or is not properly registered."  WIS. STAT. § 6.325; *see also* WIS. STAT. §§ 6.48, 6.925, 6.93, and 7.52(5).

21

make an entry on the registration list when a registration of an elector is changed to ineligible status. Finally, § 6.50(8) states in relevant part:

> Any municipal governing body may direct the municipal clerk or board of election commissioners to arrange with the U.S. postal service pursuant to applicable federal regulations, to receive change of address information with respect to individuals residing within the municipality for revision of the elector registration list. If required by the U.S. postal service, the governing body may create a registration commission consisting of the municipal clerk or executive director of the board of election commissioners and 2 other electors of the municipality appointed by the clerk or executive director for the purpose of making application for address changes and processing the information received. The municipal clerk or executive director shall act as chairperson of the commission.

### D. Plain Language Analysis of Pertinent Wisconsin Statutes.

¶51 The parties agree that the central question in this lawsuit is whether the Commission is the "board of election commissioners" as that phrase is used in WIS. STAT. § 6.50(3). Indeed, the explicit basis for the circuit court's writ of mandamus, and a necessary premise of Plaintiffs' arguments, is the contention that the phrase "board of election commissioners" as used in § 6.50(3) must mean the Commission. As presented above, the plain language of the closely related elections law statutes establishes that the phrase "board of election commissioners" as used in § 6.50(3) does not refer to the Commission but, rather, refers to a municipal board established by the legislature that is a separate and distinct governmental body from the Commission with separate duties and authority.

¶52 Plaintiffs argue that WIS. STAT. § 6.50(3) places on the Commission a duty to change the voter registration eligibility status of certain electors. However, § 6.50(3) does not mention the Commission. Accordingly, in the terms of the mandamus prerequisites, the Commission has no "positive and plain" duty to

22

deactivate voters pursuant to § 6.50(3) and, as a result, the circuit court's writ of mandamus must be reversed.

¶53    We first explain in greater detail the reasons for our conclusion, and we then address and reject Plaintiffs' remaining arguments to the contrary.

1.  The Legislature's Definition of "Commission" and Use of the Term.

¶54    We begin by addressing the Commission's argument that the legislature has explicitly stated that the election laws' use of the term "commission," refers to the Commission.  We accept this proposition based on the plain language of WIS. STAT. § 5.025, which states:  "**Elections commission; definition.**  In [WIS. STAT.] chs. 5 to 10 and 12, 'commission' means the elections commission."[14]  There are no other definitions for the Commission in the election laws.  The legislature has stated in clear terms how it will refer to the Commission in the election laws.  We conclude that, because the term "commission" is absent from WIS. STAT. § 6.50(3), that statutory subpart does not by its plain language apply to the Commission.

¶55    Plaintiffs not only do not respond to this persuasive and strong argument from the Commission, they do not even reference WIS. STAT. § 5.025 in their briefing in this court, even though this court cited that statute as a basis to grant the stay of the writ of mandamus.  This court will not make or develop arguments on behalf of the parties, and we thus deem this particular argument by the Commission conceded by Plaintiffs.  *See **Industrial Risk Insurers v. American Eng'g Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments."); ***State v. Pettit***, 171 Wis. 2d

---

[14]  WISCONSIN STAT. § 12.01(2) in the election laws repeats that definition.

627, 647, 492 N.W.2d 633 (Ct. App. 1992) ("We cannot serve as both advocate and judge."). *See also* ***Town of Wilson v. City of Sheboygan***, 2020 WI 16, ¶24 n.15, 390 Wis. 2d 266, 938 N.W.2d 493 (stating that it is not up to an appellate court to make or develop arguments on behalf of parties); ***Hoffman v. Economy Preferred Ins. Co.***, 2000 WI App 22, ¶9, 232 Wis. 2d 53, 606 N.W.2d 590 (stating that arguments to which no response is made may be deemed conceded for purposes of appeal).

¶56 Without stating it directly, Plaintiffs' arguments contain the proposition that WIS. STAT. § 6.50(3) is the only statutory subpart in the election laws in which the Commission is referred to as the "board of election commissioners." We reject this contention given the legislature's clarity as to the meaning of the term "commission," and the more than 100 instances in the election laws in which the term "commission" explicitly refers to the Commission. Conversely, the legislature gives no indication that the phrase "board of election commissioners" is to be interpreted differently in § 6.50(3) than in the more than 100 other instances that the term "board of election commissioners" is used in the election laws. Nonetheless, Plaintiffs ask this court to conclude that the legislature, without saying so, created an exception to the definition of "commission" in WIS. STAT. § 5.025, and that one exception is in § 6.50(3). Accepting Plaintiffs' assertion requires adding words to either, or both, §§ 5.025 and 6.50(3). Adding words to a statute is not within a Wisconsin court's authority in interpreting statutes. *See* ***Wiedmeyer***, 370 Wis. 2d 187, ¶13 ("It is not up to the courts to rewrite the plain words of statutes.").

2. Statutory History.

¶57 Plaintiffs and amici rely on statutory history regarding elections. We agree that statutory history of the election laws informs our analysis. ***State ex rel. DNR v. Wisconsin Court of Appeals, District IV***, 2018 WI 25, ¶15, 380 Wis. 2d 354, 909 N.W.2d 114, states:

> We may also look to the statute's history where, as here, there has been a significant revision to the language in which we are interested. *[County] of Dane v. LIRC*, 2009 WI 9, ¶ 27, 315 Wis. 2d 293, 759 N.W.2d 571 ("'A review of statutory history is part of a plain meaning analysis' because it is part of the context in which we interpret statutory terms." (citation omitted)).

¶58 Our review of the pertinent statutory history confirms that the term "board of election commissioners" in WIS. STAT. § 6.50(3) does not refer to the Commission.

¶59 The employment of the term "board of election commissioners" in the Wisconsin Statutes began no later than 1965. *See* WIS. STAT. §§ 10.01 and 10.63 (1965-66) (referring to the "board of election commissioners"). In the 1967-68 Wisconsin Statutes, §§ 10.01 and 10.63 were renumbered to WIS. STAT. §§ 7.20-7.22, and the wording of these statutes has not changed in any sense material to our discussion through the 2017-18 version.

¶60 What has changed is the language in WIS. STAT. § 6.50(1) and (2), with the result that the duties currently placed on the Commission under § 6.50(1)-(2r) were once the duties of the "municipal clerk and the board of election commissioners." In previous versions of § 6.50(1) and (2), the duty to send a notice to a voter who has not voted for several years and then, if required, to change the

25

voter's registration status to ineligible was placed on the "municipal clerk or board of election commissioners." *See, e.g.,* §§ 6.50(1) and (2) (2005-06).

¶61 However, the legislature amended the pertinent portion of WIS. STAT. § 6.50 pursuant to 2013 Wis. Act 149, § 1, and the duties regarding inactive voters as noted in § 6.50(1)-(2r) were transferred to "the board."[15] *See* § 6.50(1)-(2r) (2013-14). Thus, the government accountability board took over from the municipal clerks and board of election commissioners those duties delineated in those subparts of the statute. *See id.*

¶62 The legislature again amended pertinent portions of WIS. STAT. § 6.50 pursuant to 2015 Wis. Act 118, § 266(10) (effective December 2015). In that Act, the legislature transferred responsibility for the duties detailed in § 6.50(1)-(2r) to "the commission" by replacing references to "the board" with "the commission" upon creation of the Commission. *See* WIS. STAT. §§ 6.50 and 15.61 (2015-16).

¶63 Plaintiffs' arguments necessarily encompass the contention that, when the legislature amended the election laws in 2015 (and defined "commission" in WIS. STAT. § 5.025 as the Commission), the legislature changed the language over a hundred times in the election laws to refer to the Commission as "the commission" *except* for one subpart of WIS. STAT. § 6.50(3) in which the legislature used the phrase "board of election commissioners" to refer to the Commission. No reasonable reading of the statutes or that statutory history supports Plaintiffs' contention.

---

[15] WISCONSIN STAT. § 5.02(1s) (2013-14) stated that "'[b]oard' means the government accountability board."

### 3. Use of Terms in the Same Sentence of a Statute.

¶64    The Commission argues that the phrase "board of election commissioners" in WIS. STAT. § 6.50 does not refer to the Commission because the legislature distinguished between a board of election commissioners and the Commission within the same sentences in subsections of § 6.50.  We conclude that, consistent with Wisconsin law regarding statutory interpretation, the Commission's assertion is correct.  Our supreme court has stated:

> "[W]here the legislature uses similar but different terms in a statute, particularly within the same section, we may presume it intended the terms to have different meanings." (brackets in original) (internal marks and citation omitted)); see Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012) (defining canon of "Presumption of Consistent Usage" as requiring, inter alia, that "a material variation in terms suggests a variation in meaning").

*State ex rel. DNR*, 380 Wis. 2d 354, ¶28 (quoted source omitted).  *See also State v. Neill*, 2020 WI 15, ¶¶21-23, 390 Wis. 2d 248, 938 N.W.2d 521.

¶65    The following examples confirm our conclusion.  WISCONSIN STAT. § 6.50(2g) states:  "The *commission* may delegate to a municipal clerk or *board of election commissioners* of a municipality the responsibility to change the registration status of electors when required under sub. (2)."  (Emphasis added.)  Section 6.50(7) provides:  "When an elector's registration is changed from eligible to ineligible status, the *commission*, municipal clerk, *or board of election commissioners* shall make an entry on the registration list …."  (Emphasis added.)  Additional examples of the distinction made by the legislature between the Commission and the "board of election commissioners" in the same sentence exist elsewhere in the election laws.  *See, e.g.,* WIS. STAT. §§ 6.275(1)(f), 6.36(1)(b)1.a., 6.56(3) and 7.52(1)(a).  We agree with the Commission that, if the phrase "board of

27

election commissioners" meant the Commission, those statutes would not be phrased so as to use those terms separately in the same sentence.

¶66    Finally, Wisconsin courts are to avoid interpreting statutes such that an interpretation causes surplusage in the statute.  *See Milwaukee Dist. Council 48 v. Milwaukee Cty.*, 2019 WI 24, ¶24, 385 Wis. 2d 748, 924 N.W.2d 153.  When the legislature uses the terms "commission" and "board of election commissioners" in the same sentence, reading those terms to be synonymous would render one of the terms surplusage.  That result is untenable under Wisconsin law and also confirms that the Commission's argument is correct.

### 4.  The Commission is Not a "Board."

¶67    The Commission next argues that it does not have duties under WIS. STAT. § 6.50(3) because, not only is the Commission not a "board of election commissioners," it is not a "board" in any sense under Wisconsin law.  The statutes in WIS. STAT. ch. 15 concern the structure of the executive branch of Wisconsin government.  *See* WIS. STAT. § 15.001.  We briefly summarize pertinent provisions of that chapter.

¶68    WISCONSIN STAT. § 15.02(2) states in relevant part:  "The principal administrative unit of the executive branch is a 'department' or an 'independent agency.'"  The Commission is an independent agency created in subch. III of WIS. STAT. ch. 15.  *See* WIS. STAT. § 15.61 and *cf.* WIS. STAT. § 15.01(5) ("'Department' means the principal administrative agency within the executive branch of Wisconsin state government, but does not include the independent agencies under subch. III.").

¶69    An independent agency, such as the Commission, "may be headed by a commission, a commissioner *or* a board."  WIS. STAT. § 15.02(2) (emphasis

added). As shown in the statutes within subch. III of WIS. STAT. ch. 15, while some independent agencies are headed by "boards," the Commission is headed by a "commission." *See* WIS. STAT. §§ 15.57-15.94. Indeed, the statutory selection process of a "board" to head an independent agency is inconsistent with the process for selection of commissioners for the Commission. *Compare* WIS. STAT. § 15.07 *with* § 15.61. For these reasons, we reject Plaintiffs' conclusory assertion that the Commission is a "*board* of election commissioners"; under Wisconsin law, the Commission is a "commission" and it is not, and cannot be, a "board" under Wisconsin law.

¶70 These points were raised by the Commission in briefing in this court and in our order granting a stay of the writ of mandamus. However, Plaintiffs fail to counter the Commission's arguments regarding the proper interpretation of these statutes in their appellate briefing. Instead, Plaintiffs' only response on this issue is the bald assertion that "[i]n ordinary parlance, a body of six commissioners charged with administering elections is a board of election commissioners." Plaintiffs provide no authority for this proposition, nor any authorities to counter the plain meaning of the statutes discussed immediately above. Contrary to Plaintiffs' suggestion that this court should be bound by unsupported "ordinary parlance," we follow our supreme court's and legislature's direction that "technical or specially-defined words or phrases are given their technical or special definitional meaning." *See Kalal*, 271 Wis. 2d 633, ¶45; *State v. Brantner*, 2020 WI 21, ¶15 n.9, 390 Wis. 2d 494, 939 N.W.2d 546; *see also* WIS. STAT. § 990.01(1).

¶71 For these reasons, we conclude that the phrase "board of election commissioners" in WIS. STAT. § 6.50(3) does not refer to the Commission, and the Commission has no duties pursuant to § 6.50(3).

**E. Plaintiffs' Remaining Arguments.**

¶72    We now address Plaintiffs' remaining arguments.

## 1. Meaning of Election Laws.

¶73    Plaintiffs make several, often abbreviated, arguments that use of the phrase "board of election commissioners" in WIS. STAT. § 6.50(3) means the Commission. Each of Plaintiffs' arguments attempts to avoid the plain language in the election laws.

¶74    First, Plaintiffs argue that nowhere in the election laws is the term "board of election commissioners" defined. But, Plaintiffs fail to point to any definition of "board of election commissioners" which includes the Commission. Also, we acknowledge that WIS. STAT. § 5.02 does not contain a specific definition for "board of election commissioners" as it does for some other terms, but that absence does not compel the conclusion that the term is untethered to any statutory description. In fact, "board of election commissioners" is comprehensively described and explained across the election laws. As noted already, WIS. STAT. §§ 7.20-7.22 "establish" a municipal board of election commissioners in cities over a certain population level and describe in detail the authority and the constitution of that commission. In these circumstances, where there can be no question as to what

the legislature means when it uses the phrase "board of election commissioners," the absence of a statutory definition of the term is of no consequence.[16]

¶75    Next, Plaintiffs contend that one snippet of WIS. STAT. § 6.36(1)(c), which uses the phrase "board of election commissioners of any municipality," compels the conclusion that where, as in WIS. STAT. § 6.50(3), the phrase "of the municipality" is not added to the term "board of election commissioners," the reference must be to the "board of election commissioners" of the state. Plaintiffs' argument dismisses all of the legislature's clear directives in the election laws as to the meaning of the term "board of election commissioners." It also requires that we conclude that there is such an entity as a *state* "board of election commissioners," and we have already rejected that contention. At any rate, Plaintiffs' argument collapses when the language of the full statutory subpart is in view.

¶76    The entire subpart reads:

> The [registration] list shall be designed in such a way that the municipal clerk or board of election commissioners of any municipality and any election official who is authorized by the clerk or executive director of the board of election commissioners may, by electronic transmission, add entries to or change entries on the list for any elector who

---

[16] Plaintiffs argue that we should not consider the heading of "**Board of election commissioners**" which precedes WIS. STAT. § 7.20 because headings are not part of the statutes. But, as shown by the language contained within the election laws, we need not resort to section headings to support our conclusion that the Commission is not a "board of election commissioners." Further, while the headings are not part of the statutes, section headings may be considered if there is ambiguity in statutes, *see State v. Dorsey*, 2018 WI 10, ¶30, 379 Wis. 2d 386, 906 N.W.2d 158, and possibly even if there is no ambiguity, *see State v. Lopez*, 2019 WI 101, ¶¶27-28, 389 Wis. 2d 156, 936 N.W.2d 125 (Ziegler, J., lead). Although we perceive no ambiguity in these statutes, we note that Plaintiffs' arguments imply that there is ambiguity in statutes applicable to our analysis. If we were to find ambiguity, which we do not, we could properly resort to section headings to resolve that ambiguity. *See Dorsey*, 379 Wis. 2d 386, ¶30.

resides in, or who the list identifies as residing in, that municipality and no other municipality.

WIS. STAT. § 6.36(1)(c). As noted, related election law statutes establish that there can be both a municipal and a county board of election commissioners, *see* WIS. STAT. § 7.20(1), and this statutory subpart is addressing both. Pursuant to WIS. STAT. § 5.02(2), which defines "[c]ounty clerk,"[17] and WIS. STAT. § 7.21(1), which refers to the duties of a "municipal or county clerk,"[18] the executive director of a county board of election commissioners carries out the duties of the county board of election commissioners. For that reason, following its plain language, § 6.36(1)(c) uses the words "of any municipality" in order to draw a distinction between the activities of a municipal board of election commissioners and that of the executive director of a county board of election commissioners.

¶77 Next, Plaintiffs contend, again in a manner untethered to the plain language of the statutes, that the creation of the registration list of voters pursuant to WIS. STAT. §§ 5.05(15) and 6.36 requires the Commission to perform obligations formerly placed on municipal clerks and the board of election commissioners by WIS. STAT. § 6.50(3). From that, Plaintiffs argue that, if their reading of the statutes is not adopted, § 6.50(3) will be effectively repealed. To the extent we understand this argument, it is circular. Plaintiffs start with the premise that § 6.50(3)'s reference to "board of election commissioners" refers to the Commission and, from

---

[17] "'County clerk' includes the executive director of the county board of election commissioners and their authorized representatives." WIS. STAT. § 5.02(2).

[18] WISCONSIN STAT. § 7.21(1) states:

All powers and duties assigned to the municipal or county clerk or the municipal or county board of canvassers under [WIS. STAT.] chs. 5 to 12 shall be carried out by the municipal or county board of election commissioners or its executive director, unless specifically retained or assigned in this section or [WIS. STAT. §] 7.22.

that premise, they attempt to argue that the phrase "board of election commissioners" means the Commission.

¶78 Moreover, Plaintiffs' argument ignores the plain statutory language that references municipal clerks in WIS. STAT. § 6.50(3), and that authorizes municipal clerks (and the board of election commissioners) to make changes to the registration list as noted in WIS. STAT. § 6.36(1)(b)1.b. and (1)(c).[19] For these reasons, rejecting Plaintiffs' arguments would not effectively repeal § 6.50(3).

¶79 In sum, all of Plaintiffs' statutory arguments as to the meaning of "board of election commissioners" are rejected.

## 2. Legislative Intent.

¶80 Plaintiffs briefly contend that the legislature "plainly understood" that the Commission's entry into the ERIC membership agreement requires the Commission to deactivate voters' registrations based on the ERIC-provided information and WIS. STAT. § 6.50(3). As discussed, "legislative intent" (inferring the subjective understanding of the legislature outside its enacted language) is not a valid basis for statutory interpretation. *See **Kalal***, 271 Wis. 2d 633, ¶44. Moreover,

---

[19] WISCONSIN STAT. § 6.36(1)(b)1.b. states that "[n]o person other than an employee of the commission, a municipal clerk, or an election official who is authorized by a municipal clerk may make a change in the list." Section 6.36(1)(c) states:

> The list shall be designed in such a way that the municipal clerk or board of election commissioners of any municipality and any election official who is authorized by the clerk or executive director of the board of election commissioners may, by electronic transmission, add entries to or change entries on the list for any elector who resides in, or who the list identifies as residing in, that municipality and no other municipality.

Plaintiffs provide no basis for the conclusion that the ERIC membership agreement, or any election laws, authorize the Commission to deactivate voters based on the information provided by ERIC.[20] Plaintiffs' argument is also circular: Plaintiffs assume that § 6.50(3) grants authority to the Commission in an attempt to show that § 6.50(3) grants authority to the Commission.

¶81 Plaintiffs' next argument is that, by making the Commission responsible for "maintenance" of the voter registration list under WIS. STAT. § 5.05(15), the legislature intended to authorize the Commission to deactivate the voter registrations of ERIC "Movers."

¶82 WISCONSIN STAT. § 5.02(17) defines "[r]egistration list" as "the list of electors who are properly registered to vote." WISCONSIN STAT. § 5.05(15) refers to that registration list and states:

> The commission is responsible for the design and maintenance of the official registration list under [WIS. STAT. §] 6.36. The commission shall require all municipalities to use the list in every election and may require any municipality to adhere to procedures established by the commission for proper maintenance of the list.

From these statutes, Plaintiffs argue that, because the Commission is responsible for the "maintenance" of the registration list, the Commission's "actions to remove Movers from the rolls are part and parcel of [the Commission's] legal duties and within its statutory authority."

¶83 Again, we do not base our statutory analysis on what Plaintiffs perceive as legislative intent. *See Kalal*, 271 Wis. 2d 633, ¶44. Plaintiffs purport to make this argument "in accordance with" the applicable Wisconsin Statutes, but

---

[20] The Commission contends that the ERIC membership agreement grants no authority to deactivate an elector's registration, and Plaintiffs do not dispute this point.

Plaintiffs provide no statutory basis for their contention that the requirement of the Commission to maintain the registration list gives the Commission the authority to change the registration of any elector from eligible to ineligible status. In fact, the action Plaintiffs seek, change of an "elector's registration from eligible to ineligible status," is specifically authorized with that phrasing, separate from the requirement to maintain the registration list, in applicable election laws. *See, e.g.,* WIS. STAT. §§ 6.36(1)(d) and (e), and 6.50(2) and (3). Plaintiffs give no reason to conclude that the legislature's use of the word "maintenance" in regard to the registration list is synonymous with the specific phrase "change the elector's registration from eligible to ineligible status."

¶84 In addition, Plaintiffs' contention would effectively amend WIS. STAT. § 6.50 to reflect Plaintiffs' perception of legislative intent. But, the legislature has not seen fit to do so, and we may not rewrite statutes. *See Wiedmeyer*, 370 Wis. 2d 187, ¶13.

### 3. Past Conduct of the Commission.

¶85 Plaintiffs rely heavily on the Commission's past conduct to support their arguments. According to Plaintiffs, the Commission "believed" in 2017 and 2019 that it had the authority under WIS. STAT. § 6.50(3) to deactivate voters' registrations. From that premise, Plaintiffs contend that the Commission must now exercise that authority under § 6.50(3). We disagree.

¶86 Our supreme court has held that the actions of an agency, or the position taken by an agency, concerning the agency's authority do not usurp the authority of the legislature. *See Wisconsin Citizens Concerned for Cranes and Doves v. DNR*, 2004 WI 40, ¶14, 270 Wis. 2d 318, 677 N.W.2d 612. "[A]gencies have 'only those powers [that] are expressly conferred or [that] are necessarily

implied by the statutes under which [they] operate.'"  ***Id.*** (quoted source omitted);
*see also **Koschkee v. Taylor***, 2019 WI 76, ¶20, 387 Wis. 2d 552, 929 N.W.2d 600
("As we have explained, an agency's powers, duties and scope of authority are fixed
and circumscribed by the legislature …." (internal quotation marks and quoted
source omitted)).  Wisconsin courts do not defer to any executive branch agency in
determining the authority of the agency.  *See **Wisconsin Power & Light Co. v. PSC***,
181 Wis. 2d 385, 392, 511 N.W.2d 291 (1994) ("[C]ourts owe no deference to an
agency's determination concerning its own statutory authority.").

¶87  Moreover, the undisputed facts in the record establish that the
Commission does not now assert or, in the words of Plaintiffs, "believe" that it has
the authority to deactivate voters pursuant to WIS. STAT. § 6.50(3).  In March 2019,
the administrator of the Commission sent a memorandum to the commissioners in
which she stated:

> There is no specific process designated in the [s]tatutes for
> the treatment of movers as identified by ERIC ….  WIS.
> STAT. § 6.36 simply requires Wisconsin's membership and
> compliance with the ERIC [m]embership [a]greement.  The
> [m]embership [a]greement provides only that the State
> "initiate contact with [such voters] in order to correct the
> inaccuracy or obtain information sufficient to inactivate or
> update the voter's record."  It does not specifically mandate
> the removal of such individuals as active registered voters or
> a timeframe for determining their status.

¶88  In December 2019, the administrator of the Commission sent another
memorandum to the commissioners stating that, in light of the results of the notices
sent in 2019, there is no statutory authority to deactivate any voters based on that
mailing.  The administrator recommended to the Commission that the Commission
should reach out to the legislature to request an amendment of the statutes to grant
such authority or receive approval from the legislature to adopt a rule regarding

possible deactivation in these circumstances.[21] The Commission approved that request in December 2019.

¶89    We acknowledge that, in 2019, the Commission sent to over 200,000 Wisconsin electors a notice based on information provided by ERIC, but this fact does not support Plaintiffs' argument. The authority for the 2019 mailing came not from WIS. STAT. § 6.50(3) but from the requirement of WIS. STAT. § 6.36(1)(ae) that the Commission comply with the ERIC membership agreement which requires that a notice be mailed by the Commission to certain electors who may have moved from their previous residence.

¶90    Plaintiffs contend that, if the Commission does not have the authority to deactivate the voters who did not respond to the 2019 mailing, then the action taken to deactivate voters by the Commission based on the 2017 mailing must have been without statutory authority. We agree, for the reasons already set forth in this opinion, and the Commission effectively concedes the point in briefing in this court.

¶91    Importantly, the absence of statutory authority for the deactivations of voter registrations by the Commission based on the 2017 mailing does not create authority for deactivation of voter registrations following the 2019 mailing. When an agency has usurped authority it did not have, the legal solution is not to double down and give the agency yet more authority not authorized by the legislature. Plaintiffs cite no authority for the proposition that this court may order voter registrations deactivated outside the statutory scheme set by the legislature, regardless of any prior Commission usurpation of authority which it now disclaims.

---

[21] *See* WIS. STAT. § 5.05(5f) which states: "ADVICE TO COMMISSION. The joint committee on legislative organization shall be advisory to the commission on all matters relating to operation of the commission."

*See State ex rel. Frederick v. Zimmerman*, 254 Wis. 600, 613, 373 N.W.2d 473 (1949); *State v. Circuit Ct. for Marathon Cty.*, 178 Wis. 468, 473, 190 N.W. 563 (1922) (both opinions discussing the importance of voting rights in Wisconsin).

¶92     In sum, we reject Plaintiffs' arguments because those arguments have no support in the statutory language and, if accepted, would violate the policy choices made by the legislature.  *See Flynn v. DOA*, 216 Wis. 2d 521, 529, 576 N.W.2d 245 (1998) ("It is for the legislature to make policy choices, ours to judge them based not on our preferences but on legal principles ...."); *see also Town of Wilson*, 2020 WI 16, ¶45; *Mayo v. Wisconsin Injured Patients and Families Comp. Fund*, 2018 WI 78, ¶¶26, 40, 383 Wis. 2d 1, 914 N.W.2d 678 (both cases state that courts do not re-weigh policy choices of the legislature).

### F.  Reliable Information.

¶93     As stated, we conclude that WIS. STAT. § 6.50(3) does not apply to the Commission.  However, the Commission argues that the writ of mandamus has an additional defect which we now briefly discuss.  That defect concerns the circuit court's implicit findings about "reliable information."

¶94     The Commission contends that, if WIS. STAT. § 6.50(3) applies to the Commission (and we conclude it does not), the circuit court erred in granting the writ of mandamus because the Commission made a discretionary decision that the ERIC Movers data is not "reliable" as that term is used in § 6.50(3).  Although we need not reach this issue in light of our other conclusions in this opinion, we do so as an additional basis on which to reverse the circuit court's writ of mandamus.

¶95     The Commission argues that the decision as to whether information is "reliable" is not a proper subject of mandamus because it requires the exercise of

judgment and discretion by the Commission.  *See Beres v. City of New Berlin*, 34 Wis. 2d 229, 231-32, 148 N.W.2d 653 (1967) ("It is well settled that mandamus will not lie to compel the performance of an official act when the officer's duty is not clear and requires the exercise of judgment and discretion.").  We agree.

¶96    WISCONSIN STAT. § 6.50(3) does not define "reliable" and does not specify how reliability is determined or what type of information is reliable regarding any particular voter.  Further, neither § 6.50(3) nor any other statute in the election laws states that the information provided through the ERIC membership agreement is reliable under § 6.50(3).

¶97    Under the circumstances present in the record, we conclude that the Commission's discretionary determination regarding what information is reliable is not a proper subject of a writ of mandamus.

¶98    Moreover, the focus of Plaintiffs' "reliable information" argument to the contrary is incompatible with the language of WIS. STAT. § 6.50(3) for at least the following reason.  Plaintiffs argue, in effect, that information regarding hundreds of thousands of electors should be subject to just one determination of whether that information is sufficiently "reliable" under § 6.50(3).  In other words, according to Plaintiffs, as long as the information is "reliable" when considering hundreds of thousands of people, then the information is reliable enough to change the voter registration status of all people within the group to ineligible status, even if there is no statutory basis to change the eligibility status of some of the individuals among the hundreds of thousands of voters.

¶99    That contention fails in light of the plain language of WIS. STAT. § 6.50(3).  The statute does not refer to "groups" of electors in determining if any one elector should be found ineligible.  Rather, the legislature has chosen language

requiring that the determination of reliability or unreliability be made voter-by-voter by referring to "elector" in the singular. We repeat the following language of § 6.50(3) to illustrate the point:

> Upon receipt of reliable information *that a registered elector has changed his or her residence* … the municipal clerk or board of election commissioners shall notify *the elector* …. If *the elector* no longer resides in the municipality or fails to apply for continuation of registration within 30 days of the date the notice is mailed, the clerk or board of election commissioners shall change *the elector's* registration from eligible to ineligible status.

(Emphasis added.) This statutory subpart requires that a determination of reliability of information, and any possible change of voter registration status to ineligible, be made voter-by-voter and not as a group as Plaintiffs contend. *See also* WIS. STAT. §§ 6.22(4)(f), 6.32(2) and (4), and 6.86(2)(b) (each of which concerns information reliability in the context of an individual elector).[22]

¶100 In sum, we conclude that Plaintiffs fail to show that the Commission has a "positive and plain" duty pursuant to WIS. STAT. § 6.50(3), and we reverse the writ of mandamus.

## II. Contempt.

¶101 We now turn to the circuit court's contempt of court order of January 13, 2020. Because the circuit court concluded that the Commission had not complied with the court's writ of mandamus of December 13, 2019, the court held the Commission and three individual members of the Commission in contempt and

---

[22] We further note that there is no support for Plaintiffs' contention that there is evidence in the record that the Commission verified each individual entry on any ERIC Movers list. The only part of the record that Plaintiffs cite in support of that proposition is a PowerPoint screenshot which does not show that each individual elector's information was verified.

imposed a remedial sanction against the Commission of $50 per day and against the individual commissioners of $250 per day. In its order, the court states that the Commission and any individual members can purge that contempt finding by complying with the writ of mandamus. The contempt order does not require the Commission or any commissioners to pay any kind of retrospective penalty.

¶102 We stayed both the writ of mandamus and the contempt order mid-morning on January 14, 2020, after the supreme court denied Plaintiffs' Petition to Bypass during the evening of January 13, 2020. We also granted temporary relief pending appeal in the form of a stay of any accumulation of monetary penalties imposed. Plaintiffs do not contest that decision. Because of our stay of the writ of mandamus, neither the Commission nor any of its individual members is in contempt at this time.

¶103 We need not reach many of the contempt issues raised by the parties because, as Plaintiffs concede, the question of any future contempt finding against the Commission or any of its individual commissioners is resolved by our decision that reverses the circuit court's writ of mandamus. Nonetheless, Plaintiffs claim that there is still one consequence regarding the contempt order. Specifically, Plaintiffs want sanctions granted for the less-than-24-hour period from the contempt finding by the circuit court on January 13, 2020, until our stay of the circuit court's order on January 14, 2020.[23]

¶104 As relevant here, contempt is the intentional disobedience of a court order. *See* WIS. STAT. § 785.01(1)(b). Civil or remedial contempt is a sanction imposed for violation of a court order and, when a court holds a party in remedial

---

[23] Plaintiffs contend that the circuit court found the Commission and some of its commissioners in contempt for thirty-two days. Plaintiffs do not cite to the record for that assertion.

contempt, consistent with that power is the court's authority to provide purge conditions designed to end the contempt. ***State ex rel. V.J.H. v. C.A.B.***, 163 Wis. 2d 833, 844-45, 472 N.W.2d 839 (Ct. App. 1991).

¶105  Plaintiffs do not cite to any circuit court findings to support their argument regarding sanctions.[24]  Nonetheless, the transcript from the contempt hearing shows that the court was aware that the Commission would be meeting the next morning at 10:00 a.m., and the court granted the purge order already noted.  A reasonable reading of the court's purge order is that the court expected the Commission to comply with the writ of mandamus starting at the next morning's meeting of the Commission.  We do not find a basis in the record for Plaintiffs' request for sanctions from the time of the contempt hearing in the circuit court on January 13 until we granted a stay of the contempt order mid-morning the next day.  In other words, the circuit court would not have expected the Commission to comply with the purge order in the very short amount of time between the granting of the order in open court and our granting of the stay of the order the next morning just minutes before the Commission was to meet.

¶106  Further, we agree with the Commission that it could not have lawfully complied in every respect with the writ of mandamus as that order was stated by the circuit court.  The writ of mandamus directed the Commission "to comply with the provisions of [WIS. STAT.] § 6.50(3) and deactivate the registrations of those electors who have failed to apply for continuation of their registration within 30

---

[24] Rather, and apparently as alleged evidence of contempt, Plaintiffs give us nothing more than URLs on the internet to newspaper and television reports and provide no citations to show that those are in the record.  For good measure, the Commission cites in its briefing in this court to a television station report, that is not in the record, regarding a separate issue.  We do not consider any materials not in the record.  *See* WIS. STAT. RULE 809.19(1)(e); ***South Carolina Equip., Inc. v. Sheedy***, 120 Wis. 2d 119, 125-26, 353 N.W.2d 63 (Ct. App. 1983).  We caution counsel not to ask us to consider materials not in the record.

days of the date the notice was mailed under that provision." The Commission points out that § 6.50(3) by its terms contemplates deactivation of a voter's registration only upon a determination that the voter has moved *outside* the municipality. Plaintiffs concede on appeal that the electors who received the 2019 Commission mailing who moved intra-municipality could not have had their registrations deactivated consistent with the terms of § 6.50(3).

¶107 The circuit court's writ of mandamus is overbroad because it encompasses electors who have moved within a municipality when there is no statutory requirement to deactivate the registrations of electors who moved intra-municipality. For these reasons, we conclude that the Commission and the individual commissioners could not have complied in every respect with the circuit court's writ of mandamus, and the Commission and the individual commissioners had a defense to a contempt finding as to part, but not all, of the writ of mandamus.

¶108 Finally, we address one more argument of the Commission to complete our discussion of the contempt order.

¶109 The Commission argues that, because it requested a stay of the writ of mandamus in this court and the supreme court after entry of the writ of mandamus, but before the contempt hearing, there could not be a finding that the Commission or any of its members intended to disobey the writ of mandamus. We reject that contention based on our conclusion that Plaintiffs correctly respond that WIS. STAT. § 808.07(1) provides that an appeal of an order, including a request for a stay of enforcement of that order, does not stay enforcement of a circuit court order. There is a difference between asking for a stay from an appellate court and having the stay granted.

### III.  Remand to the Circuit Court.

¶110   Plaintiffs do not request remand to the circuit court if the Commission prevails in this appeal.  However, the causes of action and requests for relief in Plaintiffs' complaint cause us to conclude that we must remand this matter to the circuit court for dismissal of the complaint.

¶111   In their complaint, Plaintiffs' first cause of action requests declaratory relief, injunctive relief, or, in the alternative, a writ of mandamus based on their contention that the Commission must enforce WIS. STAT. § 6.50(3).  Plaintiffs' second cause of action seeks declaratory relief based on their allegation that the Commission violated WIS. STAT. § 227.10 because, without passing a formal administrative rule, the Commission adopted a policy not to enforce § 6.50(3). Plaintiffs do not contend in this court that their second cause of action is a basis to affirm the circuit court's writ of mandamus.

¶112   Each of the causes of action and requests for relief in Plaintiffs' complaint are based on Plaintiffs' contention that the Commission has a duty to enforce WIS. STAT. § 6.50(3).  Because we have rejected that contention, each cause of action in Plaintiffs' complaint must be dismissed.

### CONCLUSION

¶113   For the foregoing reasons, the writ of mandamus and the contempt order of the circuit court are reversed, and this matter is remanded to the circuit court for dismissal of Plaintiffs' complaint.

*By the Court.*—Orders reversed and cause remanded with directions.