# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2018AP2350

Complete Title of Case:

STATE OF WISCONSIN EX REL. JAMIE A. COOGAN,

PETITIONER-APPELLANT,

V.

STEVEN R. MICHEK, SHERIFF, IOWA COUNTY SHERIFF'S OFFICE,

RESPONDENT-RESPONDENT.

| | |
|---|---|
| Opinion Filed: | May 28, 2020 |
| Submitted on Briefs: | January 22, 2020 |

| | |
|---|---|
| JUDGES: | Fitzpatrick, P.J., Blanchard and Kloppenburg, JJ. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Jeremiah Wolfgang Meyer-O'Day* of *Martinez & Ruby, LLP*, Baraboo. |
| Respondent ATTORNEYS: | On behalf of the respondent-respondent, the cause was submitted on the brief of *William S. Cole* of *Axley Brynelson, LLP*, Madison. |

COURT OF APPEALS
DECISION
DATED AND FILED

May 28, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2350**

STATE OF WISCONSIN

Cir. Ct. No.  2017CV142

**IN COURT OF APPEALS**

STATE OF WISCONSIN EX REL. JAMIE A. COOGAN,

PETITIONER-APPELLANT,

V.

STEVEN R. MICHEK, SHERIFF, IOWA COUNTY SHERIFF'S OFFICE,

RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Iowa County: WILLIAM ANDREW SHARP, Judge.  *Reversed and cause remanded with directions*.

Before Fitzpatrick, P.J., Blanchard and Kloppenburg, JJ.

¶1      BLANCHARD, J.    Jamie Coogan was serving a jail sentence when Iowa County Sheriff Steven Michek determined, based on an inmate classification

system created by the Sheriff, that Coogan would not be released under the Huber Law, even though the circuit court had expressly ordered Huber release for Coogan. *See* WIS. STAT. § 303.08 (2017-18) ("Huber Law" permits a sentencing court to order that a county sheriff allow a county jail inmate to pursue certain types of opportunities, such as employment or education, outside the jail facility "during necessary and reasonable hours").[1] Coogan brought this action for a writ of mandamus against the Sheriff that would direct the Sheriff to follow the court order in Coogan's judgment of conviction that granted him Huber release. The circuit court dismissed the writ petition on the ground that the Sheriff has authority under the state constitution and statutes other than the Huber Law to disregard an order for Huber release contained in a judgment of conviction.

¶2 We agree with Coogan. The legislature, through specific directions in the Huber Law, has defined the circumstance in which a Wisconsin sheriff may temporarily suspend an order for Huber release. In addition, a Wisconsin sheriff may ask a circuit court to withdraw an order for Huber release. But neither of these circumstances were present here. Therefore the Sheriff had a "positive and plain" duty to grant Huber release to Coogan. Accordingly, we reverse the circuit court's decision to deny mandamus relief and remand with directions that the circuit court enter an order granting mandamus relief.[2]

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Separately, for ease of reference, when we refer to "the Sheriff" we mean, individually or collectively: Sheriff Michek personally, the Iowa County Sheriff's Office, or any employee of that office.

[2] The issue in this appeal may be moot, but we take up the issue regardless. Coogan is no longer confined in the Iowa County Jail and therefore resolution of his Huber status "will have no

## BACKGROUND

¶3       Coogan was convicted in a criminal case, he received a disposition of probation, his probation was revoked, and he was sentenced after revocation to a jail term. Only one aspect of those criminal proceedings is pertinent here. The pertinent aspect is that the circuit court expressly ordered that Coogan's jail term following revocation be served with the release privilege created by the Huber Law.[3]

---

practical effect on the underlying controversy." *See **State ex rel. Olson v. Litscher***, 2000 WI App 61, ¶3, 233 Wis. 2d 685, 608 N.W.2d 425. The Sheriff asserts that the issue is moot, but takes no position as to whether we should address the issue regardless of mootness. Coogan replies that it is not moot because he has requested damages resulting from the Sheriff's refusal to honor the court's decision to grant him Huber release, and in the alternative argues that we should address the issue regardless of mootness. We agree with Coogan that, even if moot, the Huber issue is of "great public importance," "'a decision is needed to guide the trial courts,'" and it is "'likely of repetition and yet evades review' because the situation involved is one that typically is resolved before completion of the appellate process." *See **id.*** (quoted sources omitted). The circuit court took a similar approach, noting the mootness issue, but stating that the parties failed to address the issue and observing that "exceptions to mootness do exist."

As for potential damages, the circuit court did not address that issue and the parties have not briefed it in this court. Coogan merely refers to the claim for damages in his petition under a mandamus-related provision, WIS. STAT. § 783.04 ("If judgment be for the plaintiff, the plaintiff shall recover damages and costs."). *See also* WIS. STAT. § 783.02 (pleadings and proceedings in mandamus actions). Further, Coogan makes this reference for the first time in his reply brief. We express no view about the potential availability of damages following remand.

[3] WISCONSIN STAT. § 303.08, the Huber Law, provides in pertinent part:

>        (1) Any person sentenced to a county jail for crime … may be granted the privilege of leaving the jail during necessary and reasonable hours for any of the following purposes [listing 11 purposes, including "Seeking employment or engaging in employment training" and "Working at employment," see subparagraphs (a) and (b)] ….
>
>        (2) Unless such privilege is expressly granted by the court … the person is sentenced to ordinary confinement. A prisoner … may petition the court for such privilege at the time of sentence or thereafter, and in the discretion of the court [the prisoner] may renew the prisoner's petition. The court may

¶4     We turn to the inmate classification system used by the Sheriff. It is undisputed that Wisconsin sheriffs are obliged under WIS. STAT. § 302.36 to use inmate classification systems to make decisions about the types of housing assignments, services, and programs that the sheriffs provide for jail inmates, while the specifics of these classification systems are left to the discretion of each sheriff.[4] In particular, § 302.36 does not require Wisconsin sheriffs to include any feature that can be or must be used to disregard court orders for Huber release. The Sheriff here, as part of his operation of the classification system that he created, would establish a "custody status" for each inmate in the jail at any given time.

¶5     In October 2017, shortly after the court imposed Coogan's one-year-with-Huber sentence and while Coogan was a jail inmate, the Sheriff used his classification system to assign Coogan a custody status of "maximum." As a result, Coogan could not be released on Huber. The exception to that would be if the

---

> withdraw the privilege at any time by order entered with or without notice.

Coogan was sentenced in the criminal case by the Hon. Robert P. VanDeHey, but Coogan does not challenge any decision by Judge VanDeHey. The Hon. William Andrew Sharp presided over the civil action now on appeal.

[4] WISCONSIN STAT. § 302.36 ("Classification of prisoners") provides in pertinent part:

> The sheriff, … shall establish a prisoner classification system to determine prisoner housing assignments, how to supervise and provide services and programs to a prisoner, and what services and programs to provide a prisoner. The prisoner classification system shall be based on objective criteria, including a prisoner's criminal offense record and gender, information relating to the current offense for which the prisoner is in jail, the prisoner's history of behavior in jail, the prisoner's medical and mental health condition, and any other factor the sheriff, … considers necessary to provide for the protection of prisoners, staff, and the general public.

*See also* WIS. ADMIN. CODE § DOC § 350.21 (April 2020) (listing required components of inmate classification systems).

Sheriff decided in his discretion, to Coogan's benefit, to "manually override" Coogan's "maximum" classification.

¶6 The Sheriff's position is that this classification of Coogan's custody status as "maximum" resulted from a "major disciplinary violation" by Coogan that involved "a physical altercation in the jail" shortly after Coogan began serving his jail term. In this appeal, Coogan does not challenge the merits of the Sheriff's discipline or reclassification decisions in themselves. He challenges only the resulting decision of the Sheriff to use the classification system to disregard the sentencing court's order granting Coogan Huber release.

¶7 The parties and the circuit court all operated from the following factual premise, which we follow: for a period longer than five days, the Sheriff relied on his classification system and did not use a "manual override," thereby denying Coogan Huber release over that period. The fact that the Sheriff's no-Huber period for Coogan lasted longer than five days is significant under the Huber Law. Wisconsin sheriffs may, without court approval, suspend the privilege for up to five days in response to a given "breach of discipline or other violation of jail regulations." *See* WIS. STAT. § 303.08(10). Thus here, so far as the parties inform us, the Sheriff could have relied on this temporary suspension exception to deny Coogan the court-ordered release for up to five days as a result of a jail regulation violation, without leave of the sentencing court or even notice to the court.

¶8 Separately, as the Huber Law text quoted in footnote 3 above reflects, the circuit court could have withdrawn the privilege "at any time by order entered with or without notice." *See* WIS. STAT. § 303.08(2). Thus, the Sheriff here could have requested that the court withdraw its Huber order for Coogan. We are aware that it is routine for Wisconsin sheriffs to make such requests when there is evidence

5

that an inmate has violated a jail regulation. Here, it is undisputed that the Sheriff did not ask the circuit court at any pertinent time to exercise the court's authority to withdraw Coogan's Huber release privilege, nor did the sentencing court do so on its own initiative or at the request of anyone else.

¶9 Coogan filed a petition for a writ of mandamus in the circuit court.[5] As pertinent to the issue in this appeal, Coogan requested an order requiring that the Sheriff "refrain from refusing to allow Mr. Coogan to exercise his work release privilege for more than five days as a result of any single breach of discipline or violation of jail regulations." Coogan filed a motion and supporting brief for partial summary judgment, arguing in pertinent part that Wisconsin sheriffs may not unilaterally "restrict or deny the exercise of Huber privilege for any reason other than a breach of jail discipline or jail rule," and then only under the temporary suspension exception of up to five days in WIS. STAT. § 303.08(10).

¶10 The Sheriff's arguments in response focused on the rights and obligations of Wisconsin sheriffs under the Wisconsin Constitution and on WIS. STAT. § 59.27(1). Section 59.27(1) provides that a Wisconsin sheriff has the duty to "[t]ake the charge and custody of the jail maintained by the county and the persons in the jail, and [to] keep the persons in the jail personally or by deputy or jailer." The Sheriff argued in part: "[W]hile the legislature has determined that the judiciary is best suited to determine eligibility to exercise Huber privileges under WIS. STAT. § 303.08(2), the judiciary is not well suited to oversee the various decisions attendant to the execution of [the Huber] privilege."

---

[5] Coogan requested alternative relief in the form of a declaratory judgment, in line with the requested mandamus relief. But he drops this alternative request in his principal brief on appeal, and we discuss the topic no further.

¶11    The circuit court denied Coogan's motion for partial summary judgment and dismissed the petition, agreeing with arguments advanced by the Sheriff that the Sheriff now repeats on appeal.  Coogan appeals.

## DISCUSSION

¶12    Our discussion has three parts.  First, we summarize the well-established mandamus requirements and standards of review, each of which applies here without dispute from either side.  Second, we explain why we interpret the Huber Law to require Wisconsin sheriffs to follow all sentencing court orders granting jail inmates the release privilege created by the Huber Law, absent a legitimate temporary suspension by the sheriff or the withdrawal of the order by the sentencing court.  Third, we explain why we reject the Sheriff's arguments based on the constitutional powers of Wisconsin sheriffs and statutes other than the Huber Law.

### I.    Requirements For Mandamus Relief; Standards Of Review; Interpretation Of Statutes

¶13    We recently had occasion to provide the following summaries of the law regarding mandamus and the interpretation of statutes.

> A writ of mandamus is "an extraordinary legal remedy." The writ "may be used to compel public officers to perform duties arising out of their office and presently due to be performed."
>
>      For a writ of mandamus to be properly issued, [the petitioner] must show that each of the following four prerequisites are satisfied:  (1) "the writ is based on a 'clear, specific legal right which is free from substantial doubt'"; (2) the alleged duty … must be "positive and plain"; (3) the [petitioner] will be "substantially damaged" by nonperformance of the … purported duty; and (4) there is no other adequate remedy at law ….

*State ex rel. Zignego v. Wisconsin Elections Comm'n*, 2020 WI App 17, ¶¶29-30, 391 Wis. 2d 441, 941 N.W.2d 284 (citations omitted). The parties focus on the first and second prerequisites, and so will we.

¶14 Turning to our standard of review,

> We will uphold a circuit court's grant or denial of a writ of mandamus unless the circuit court erroneously exercised its discretion. A circuit court's "discretion in issuing a writ of mandamus is erroneously exercised if based on an erroneous understanding of the law." When a circuit court order interprets Wisconsin Statutes, including in a writ of mandamus, we interpret the statutes independently of the circuit court's analysis.
>
> Further, our supreme court instructs that "'[i]t is an [erroneous exercise] of discretion to compel action through mandamus when the duty is not clear and unequivocal and requires the exercise of discretion.'"

*Id.*, ¶¶32-33 (citations omitted).

¶15 As for the interpretation of statutes,

> Wisconsin courts begin "with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning."....
>
> "Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."

*Id.*, ¶34 (citations omitted).

¶16    Finally, this is an appeal from a denial of a motion for partial summary judgment, which is an issue that we review de novo. *See State v. Harenda Enters., Inc.*, 2008 WI 16, ¶24, 307 Wis. 2d 604, 746 N.W.2d 25. Summary judgment is proper when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). The dispute here presents purely legal issues, with no disputes of fact.

**II.    Huber Law**

¶17    We begin by clarifying that this case did not involve the Sheriff permitting some Huber release for Coogan, followed by a dispute over whether the Sheriff permitted his release "during necessary and reasonable hours," as directed by WIS. STAT. § 303.08(1). Instead, the Sheriff here took the position that, for a period longer than five days and regardless of the sentencing court's order, the Sheriff had the unilateral authority to prevent any Huber release whatsoever for Coogan because the Sheriff's inmate classification system dictated that result.

¶18    With that clarification, we conclude based on a plain language interpretation of the Huber Law that, putting aside any legitimate temporary suspension, the Sheriff could not disregard the court order granting Coogan Huber release based on the operation of the Sheriff's classification system.

¶19    To begin, the only reasonable interpretation of subsections (1), (1m), and (2) of WIS. STAT. § 303.08 is that it rests solely within the discretion of the sentencing court whether to "expressly grant" Huber release to a defendant headed for jail, or else to deny Huber release through silence on the topic. The Sheriff does not dispute this much, nor could he in light of the language in those statutory subsections that "the court" grants the Huber privilege.

¶20     Further, WIS. STAT. § 303.08(2) provides detailed direction that, when contrasted with a sheriff's ability to merely temporarily suspend the privilege under § 303.08(10), the sentencing court alone decides who is entitled to the Huber privilege. First, with exceptions not pertinent here, a defendant "may petition the court for such privilege at the time of sentence or thereafter, and in the discretion of the court may renew" the petition. Sec. 303.08(2). Second, as already noted above, the "court may withdraw the privilege at any time by order entered with or without notice." *Id.* These provisions reinforce the concept that the decision of whether to grant the privilege remains with the court even after sentencing, and does not shift to the sheriff. Sheriffs have authority only to temporarily suspend the privilege under circumstances defined by the legislature.

¶21     Various other detailed provisions set forth the specific responsibilities that sheriffs have in connection with Huber, and none suggest that any sheriff responsibility includes disregarding a court-granted privilege, putting aside the temporary suspension exception. For example, sheriffs "shall endeavor to secure employment or employment training" for inmates who have been granted Huber release but who are unemployed. WIS. STAT. § 303.08(3). In line with these other specific directions for sheriffs, the Huber Law also details the only way in which a sheriff may interfere with (by temporarily suspending) a court order granting Huber release. Indeed, the specific, temporary suspension exception in § 303.08(10) would make no sense if the legislature intended that sheriffs could respond to inmate conduct by generally denying Huber release, whether through operation of an inmate classification system created by a sheriff or through some other discretionary decision.

¶22     Also highlighting the lack of sheriff discretion to disregard an order granting Huber release outside of the temporary suspension exception, the

10

legislature carves out two categories of inmates whom sheriffs are *not* permitted to release on Huber. *See* WIS. STAT. § 303.08(10m), (10r) (prohibiting release for certain inmates who have failed to obtain required assessments or driver safety plans or whose operating privileges have been restricted based on ignition interlock devices). These provisions reserve to the legislature, not the court or the sheriff, the decision as to whether to release the inmates who fall into these categories.

¶23 It does not change our statutory interpretation that the Sheriff's inmate classification system includes the manual override feature. This feature allows the Sheriff to honor court orders for Huber release even when his classification system otherwise would not. But the Sheriff reserves exclusively for himself the authority to decide whether to use the manual override feature for a given jail inmate.

¶24 Coogan provides extensive references to the history of the Huber Law and the Sheriff critiques Coogan's use of this history. But we have no need to consider these arguments, given the clarity of the current Huber Law provisions described above.

¶25 The Sheriff may intend to raise a practical point. This would be an argument that the legislature must have rejected, on grounds of practicality, using the Huber Law to establish a rule that sheriffs have no way to respond when they identify risks in allowing release for inmates who have been granted the release privilege by sentencing courts. The Sheriff argues that, under Coogan's approach, an inmate would continue to enjoy Huber release "if initially granted by a sentencing court *no matter what* occurred after [the inmate] was behind the four walls of the jail." (Emphasis in original.) But this argument merely knocks down the proverbial straw man. As we have explained, Wisconsin sheriffs have recourse under the unilateral temporary suspension exception and the ability to request court

11

withdrawal of the release privilege. The Sheriff here fails to develop an argument that this could not have been the legislative choice because the choice is impractical.

¶26 Without saying so, the Sheriff effectively asks us to add words to WIS. STAT. § 303.08. The legislature could have, but did not, include additional language in § 303.08(10), along the lines that we now italicize:

> The sheriff may refuse to permit the prisoner to exercise the prisoner's privilege to leave the jail as provided in sub. (1) for not to exceed 5 days for any breach of discipline or other violation of jail regulations, *or for a period to exceed 5 days for any violation deemed egregious by the sheriff.*

This would be a choice for the legislature alone to make. "'[C]ourts should not add words to a statute to give it a certain meaning.'" *Zignego*, 391 Wis. 2d 441, ¶35 (alteration in *Zignego*) (citing *Fond du Lac Cty. v. Town of Rosendale*, 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App. 1989)).

¶27 In sum, the Sheriff does not refute the proposition that the Huber Law grants to sentencing courts alone the authority to determine whether to order Huber release. Without pointing to any purported ambiguity in the Huber Law, he essentially changes the topic from the Huber Law to suggest that other statutes and the constitutional authority of sheriffs trump the Huber Law. We now address those arguments.

### III. Other Statutes And The Wisconsin Constitution

¶28 The Sheriff relies heavily on WIS. STAT. § 59.27(1) as a statutory basis for Wisconsin sheriffs to deny an inmate's exercise of the Huber release privilege granted by a sentencing court beyond the limited suspension exception provided in the Huber Law, along with some references to the Wisconsin Constitution. We now explain the argument as best we understand it and why we reject it.

¶29 WISCONSIN STAT. § 59.27 lists 13 statutory duties that Wisconsin sheriffs "shall" perform. Some of the duties are broad, *see, e.g.*, § 59.27(7) ("Perform all other duties required of the sheriff by law."), and some are narrow, *see, e.g.*, § 59.27(12) ("Before conducting a sale of foreclosed property, contact the clerk of the federal bankruptcy court to determine whether the court has granted a stay of relief on that property."). The duty listed in subpart (1) is the following: "Take the charge and custody of the jail maintained by the county and the persons in the jail, and keep the persons in the jail personally or by a deputy or jailer."

¶30 The Sheriff does not make the straightforward argument that WIS. STAT. § 59.27(1), by its terms, trumps or modifies the Huber Law, WIS. STAT. § 303.08. He appears to recognize that this argument would go nowhere for at least three reasons. First, the two statutes are not facially in conflict on the topic of a sheriff's authority to disregard a court's Huber release decision; only the Huber Law addresses that topic and we have explained how above. Second, the Huber Law is the more specific statute on the topic here. *See State ex rel. Hensley v. Endicott*, 2001 WI 105, ¶19, 245 Wis. 2d 607, 629 N.W.2d 686 (courts strive to avoid concluding that statutes conflict and when there is a true conflict the more specific controls). Third, a Wisconsin sheriff is not at liberty to ignore or defy a court order. *See* WIS. STAT. § 59.27(4) ("[The sheriff shall] execute all … orders issued or made by lawful authority and delivered to the sheriff."); ***Brown Cty. Sheriff's Dep't Non-Supervisory Labor Ass'n v. Brown Cty.***, 2009 WI App 75, ¶5, 318 Wis. 2d 774, 767 N.W.2d 600 ("At common law the sheriff was an officer of the court and subject to the court's commands, and this remains the case today." (citation omitted)).

¶31 Instead, the Sheriff makes an argument based on the Wisconsin Constitution and a constitutional principle that he submits has been codified in WIS. STAT. § 59.27(1) in a way that requires us to interpret § 59.27(1) to create sweeping

authority for Wisconsin sheriffs over all aspects of inmate management and conduct, including authority to decide whether to release an inmate who has been granted the release privilege by a court.

¶32    As our supreme court has had occasion to note as long ago as 1870, while sheriffs are constitutional elected office holders, our state constitution "'nowhere defines what powers, rights and duties shall attach or belong to the office of sheriff.'" *Kocken v. Wisconsin Council 40, AFSCME*, 2007 WI 72, ¶34, 301 Wis. 2d 266, 732 N.W.2d 828 (quoting *State ex rel. Kennedy v. Brunst*, 26 Wis. 412, 414 (1870)). Nevertheless, the framers of the constitution intended the office of sheriff to have "'those generally recognized legal duties and functions belonging to it in this country, and in the territory, when the constitution was adopted,'" which include "'the duties from time immemorial belonging to [the office of sheriff] by law.'" *Id.* (quoted source omitted).

¶33    With that background on the Wisconsin Constitution, the Sheriff points to the statement in *Kocken* that one of the "duties from time immemorial" for each Wisconsin sheriff is "to provide for the care and custody of the jail and the prisoners therein." The *Kocken* court stated:

> [T]he operation of the jail and the custody and care of jail inmates are part and parcel of the duties from time immemorial belonging to the office of sheriff and are distinctive to the office. In 1870, the *Brunst* court stated that "[a]mong those duties [of a sheriff], one of the most characteristic and well acknowledged was the custody of the common jail and of the prisoners therein." Case law and the opinions of the attorney general have continued to recognize that the operation of the jail is a primary duty of the office of sheriff that "gave character and distinction to the office" at common law and thus is within the constitutional prerogative of the sheriff.

*Id.*, ¶44 (footnotes and citations omitted).  And, as the court noted in ***Kocken***, a constitutional duty can survive its legislative codification.  *Id.*, ¶47 ("Of course, the simple fact that the legislature codified a duty and responsibility of the sheriff, like providing food for jail inmates, does not strip sheriffs of any constitutional protections they may have regarding this duty.").

¶34   However, the Sheriff may intend to make an argument that distorts this principle that constitutional powers can survive their codification.  He appears to contend that, when the legislature enacted WIS. STAT. § 59.27(1), it intended to *amplify* that constitutional doctrine, creating a sweeping authority for sheriffs over all aspects of jail inmate supervision and care, including the prerogative to ignore court orders for Huber release with which the sheriff disagrees.  This is the only way we can understand his arguments that § 59.27(1) "supersedes any restrictions on a sheriff's authority to restrict or deny the exercise of Huber privileges contained within WIS. STAT. § 303.08" and that sheriffs are "under no duty to allow the exercise of Huber privileges granted by a sentencing court without regard for inmate custody classification status because the sheriff has both the constitutional and statutory *obligation* to maintain custody of the jail and its inmates."  (Emphasis in original.)

¶35   There is no amplification effect.  Both the constitutional authority referenced in ***Kocken*** and a plain language interpretation of WIS. STAT. § 59.27(1) stand for the same principle:  sheriffs have the duty to "take the charge and custody of the jail" (that is, take responsibility for and care of the jail) and "the persons in the jail."  The Sheriff fails to explain how the division of responsibilities set forth in the Huber Law impinges on this duty.  The Sheriff is no less responsible for the "charge and custody" of the jail and "the persons in the jail" when some inmates are granted Huber release by a sentencing court.  The Sheriff fails to develop an

15

argument that he cannot properly execute his § 59.27(1) duty as to a particular inmate as soon as the inmate walks out of the jail on a Huber release ordered by the sentencing court simply because the Sheriff has concerns about release. This is because the Sheriff's recourse under the Huber Law, as we have explained, is to use the temporary suspension exception (if a rule has been violated) or to request Huber release withdrawal, or both.

¶36 Case law cited by the Sheriff, which largely matches the case law relied on by the circuit court, does not support his argument based on some combination of the text of WIS. STAT. § 59.27(1) and constitutional principles. He quotes from *Kocken* and *Brunst*, but these cases do not suggest that it would interfere with a constitutional power of Wisconsin sheriffs for the legislature to prevent them from disregarding sentencing court Huber decisions. The Sheriff does not challenge the Huber Law as unconstitutional either facially or as applied to him.

¶37 Also not relevant in this context is another opinion cited by the Sheriff, in which this court rejected a separation of powers challenge to a program of the Department of Corrections to release from state prisons certain prisoners in order to relieve overcrowding. *See Skow v. Goodrich*, 162 Wis. 2d 448, 469 N.W.2d 888 (Ct. App. 1991). We noted in *Skow* that the release program resembled the ordinary operation of probation and parole, in which circuit courts play little role, and that the "regulation of the timing and method of release from prison to parole is well within the department's powers." *Id.* at 452. *Skow* does not stand for the proposition, as the Sheriff appears to suggest, that the legislature cannot grant to circuit courts and to sheriffs the specific and exclusive authorities detailed in the Huber Law.

16

¶38     Nor is the Sheriff's argument supported by his citation to *State v. Schell*, 2003 WI App 78, 261 Wis. 2d 841, 661 N.W.2d 503.  There we cited WIS. STAT. § 59.27(1) in determining that a circuit court violated the separation of powers doctrine when the court purported to prohibit the possibility of a sheriff allowing home monitoring for a probationer who had been ordered by the court to serve jail time as a probation condition.  *Id.*, ¶¶9, 16, 19.  However, it was central to the analysis in *Schell* that WIS. STAT. § 302.425(2) expressly authorizes sheriffs to release inmates on home monitoring when they receive jail time.  *Id.*, ¶¶12, 18.  This is entirely distinguishable from the Huber Law context.  The Huber Law does not authorize sheriffs to determine whether to grant the Huber release privilege or to disregard a court order for the privilege, outside the temporary suspension exception.

¶39     The Sheriff may mean to develop an argument based on the combined effect of WIS. STAT. § 59.27(1) and the statute requiring sheriffs to create and use inmate classification systems quoted above in footnote 4, WIS. STAT. § 302.36.  The argument would be that the two statutes together create a legislative scheme in which sheriffs are to use their inmate classification systems to exercise their own discretion to decide which inmates may be permitted a court-granted Huber release privilege.  However, the Sheriff can point to no aspect of § 302.36 that addresses the Huber release privilege in particular or that more generally addresses inmate releases.  Nor does he point to any aspect of § 302.36 that is necessarily incompatible with the procedures set forth in the Huber Law.  And, as referenced above, he fails to present an argument that he could not operate an inmate classification system consistent with the terms of § 302.36 while honoring Huber release privilege decisions made by sentencing courts as required by the Huber Law.  No doubt, managing jails and inmates, as sheriffs are obligated to do, presents

difficult challenges. However, the terms of WIS. STAT. § 303.08 and § 302.36 are easily reconciled, and any adjustments going forward would be for the legislature to make.

¶40 In sum, we conclude that Coogan has made the required showing on two prerequisites for mandamus relief: "a clear specific legal right" to the Huber release privilege and a "positive and plain" duty by the Sheriff to honor the court order for the privilege. The other mandamus prerequisites are not contested. In addition, the Sheriff fails to present an argument against entry of partial summary judgment in favor of Coogan that we have not rejected based on our explanations above.

## CONCLUSION

¶41 For all of these reasons, we reverse the circuit court's denial of partial summary judgment to Coogan and dismissal of the petition based on our conclusion that all prerequisites of mandamus are met for at least some period of Coogan's now completed term of jail confinement. Accordingly, we direct the circuit court to grant partial summary judgment and mandamus relief to Coogan. The circuit court shall determine whether Coogan is entitled to monetary damages and, if so, the amount.

*By the Court*.—Order reversed and cause remanded with directions.