# COURT OF APPEALS
## DECISION
## DATED AND FILED

## January 13, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP2235**

**STATE OF WISCONSIN**

Cir. Ct. No. **2019CV279**

**IN COURT OF APPEALS
DISTRICT II**

PETITIONER,

   PETITIONER-RESPONDENT,

V.

DANIEL P. MCGINNIS,

   RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Ozaukee County: PAUL V. MALLOY, Judge. *Affirmed*.

Before Neubauer, C.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Daniel P. McGinnis appeals from the circuit court's harassment restraining order that prevents him from filing any lawsuit against the Petitioner without first seeking permission to do so from the presiding court.[1]  Because reasonable grounds exist to support the circuit court's order, the court did not erroneously exercise its discretion when it issued the injunction.  We affirm.

¶2     The following facts are a summary of the evidence presented at the injunction hearing underlying this appeal.

¶3     McGinnis sued the Petitioner for the first time in Broward County, Florida, seeking $2000 in forfeited bond that he had posted on her behalf.[2]  Both parties lived in Ozaukee County, Wisconsin, when the suit was filed.  When asked why he sued the Petitioner in Florida, McGinnis answered that he "couldn't possibly see how a Wisconsin court was going to interpret a bail bondsman contract" if Wisconsin does not use bail bondsmen.

¶4     The following year McGinnis sued the Petitioner six more times in the span of four months.  Both parties still lived in Ozaukee County.  The second lawsuit sought $5000 in Ozaukee County for "false arrest," the third case sought $5000 in Waukesha County for false accusations the Petitioner had made against

_____

[1] We decline to print the Petitioner's name because this case arises from a petition for a harassment injunction.  *See* WIS. STAT. § 813.125 (2017-18).  We note, however, that she is McGinnis's former girlfriend and the mother of his child.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] The case settled for $2100, and the Petitioner has "consistently" made settlement payments to McGinnis.

him, and the fourth lawsuit sought $712 in Jefferson County for a plane ticket from Milwaukee to Florida. The court ordered McGinnis to transfer the plane-ticket case from Jefferson to Ozaukee County—the county both parties share. McGinnis ignored this order. Instead, he refiled the entire plane-ticket case in Dade County, Florida, while leaving the Wisconsin case open.[3] As refiled in Florida, the fifth lawsuit alleged the identical facts and sought the same $712 damages from the Petitioner as its Wisconsin counterpart but was nonetheless a separate case. McGinnis then proceeded to sue the Petitioner a sixth time in Hennepin County, Minnesota, for $3640 of credit card charges that the Petitioner had "agreed to repay" years earlier, and he sued her for the seventh time in Muskegon, Michigan, seeking repayment of $500 in travel expenses. The Petitioner had never been to Michigan.

¶5    The Petitioner applied for a restraining order. She alleged that McGinnis was "engaging in a non-legitimate course of conduct" by "repeatedly committing acts which harass and threaten the petitioner."[4] In a subsequent hearing, McGinnis appeared as the sole witness to testify to the basis for each

---

[3] McGinnis testified that he was not present when the Jefferson County circuit court ordered the case transferred to Ozaukee County. Instead, according to McGinnis, his attorney incorrectly told him that the Jefferson County case was closed. McGinnis testified, "Had I been there in court and known, the case never would have been refiled in Florida." The circuit court took judicial notice of the Jefferson County court's order to transfer the case without objection. We therefore impute McGinnis with the knowledge that his Wisconsin case remained open. *See* WIS. STAT. § 902.01(2)(b).

[4] We note that there was an attachment to the petition signed by the Petitioner's attorney alleging, among other things, that McGinnis "filed civil suits with the same or similar intents, results and victims as [his] suits against [the Petitioner], against seven other" women and that he paid the filing fee for a Waukesha County suit against the Petitioner "with a check drawn on a closed account." Unfortunately, the details supporting these and several other allegations were not provided at the injunction hearing and the circuit court made no findings regarding these allegations; therefore, we do not consider them on appeal.

lawsuit.[5] McGinnis never explained why he filed the seven lawsuits across Florida, Minnesota, or Michigan when both parties lived in Ozaukee County, Wisconsin, apart from his single statement about bail bondsmen.

¶6 McGinnis testified at the injunction hearing that there were no other lawsuits pending against the Petitioner. This was false.[6] The day after the court ordered the injunction, the Petitioner was served with two more summons and complaints for an eighth lawsuit McGinnis filed in Muskegon, Michigan, and a ninth lawsuit in Ludington, Michigan. Like the Dade County case, these two new Michigan cases were repeats; they alleged identical facts and sought similar damages as the previous lawsuit that McGinnis had filed in Michigan even though they were two separate, additional cases.

¶7 The circuit court granted the Petitioner's restraining order. The court ordered that McGinnis "may not file any lawsuit against [the Petitioner] until he has received approval for the filing from the judge assigned to preside over the litigation." As the court made clear, "[t]hat way you can file lawsuits, but you have to get approval first." McGinnis appeals.

---

[5] As to the merits of these nine lawsuits, McGinnis's testimony indicated that "at no time, did a court find his lawsuits as being frivolous or lacking legal merit." The Petitioner did not respond to this claim in her brief. Thus, we assume, without deciding, that these lawsuits are not frivolous on the merits. *See* ***State ex rel. Zignego v. Wisconsin Elections Comm'n***, 2020 WI App 17, ¶27, 391 Wis. 2d 441, 941 N.W.2d 284. However, we note that filing multiple lawsuits on the same facts and seeking the same damages is frivolous. So, too, is presenting a claim for an improper purpose, such as to harass the opposing party. *See* WIS. STAT. § 802.05(2)(a), (4)(b)1. (codifying that a filing is frivolous if it violates the party's representation to the court that "[t]he paper is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation").

[6] There was no confusion about this point. The circuit court went over McGinnis's various court filings against the Petitioner several times, and McGinnis testified, unequivocally, that he had discussed with the court every case he had filed against the Petitioner and that there were no additional cases pending.

4

¶8      Although the decision to grant an injunction is within the circuit court's discretion, in order to do so the court must find "reasonable grounds to believe that the respondent has engaged in harassment with intent to harass or intimidate the petitioner." *Board of Regents-UW Sys. v. Decker*, 2014 WI 68, ¶35, 355 Wis. 2d 800, 850 N.W.2d 112 (quoting WIS. STAT. § 813.125(4)(a)3.). "We independently review the circuit court's conclusion, based on the established facts, whether such reasonable grounds exist." *Welytok v. Ziolkowski*, 2008 WI App 67, ¶23, 312 Wis. 2d 435, 752 N.W.2d 359 (citing *M.Q. v. Z.Q.*, 152 Wis. 2d 701, 708, 449 N.W.2d 75 (Ct. App. 1989)). This presents a mixed question of fact and law. *M.Q.*, 152 Wis. 2d at 708. We affirm the lower court's factual findings unless they are clearly erroneous. WIS. STAT. § 805.17(2). But "the application of a statute to specific facts are questions of law that we review de novo." *Garcia v. Mazda Motor of Am., Inc.*, 2004 WI 93, ¶7, 273 Wis. 2d 612, 682 N.W.2d 365.

¶9      McGinnis argues that the circuit court did not have authority to enter this order because "a violation of WIS. STAT. § 813.125 may not rest on conduct that serves a legitimate purpose." McGinnis contends that his nine underlying lawsuits were meritorious and thus could not constitute harassment.

¶10     "Harassment" is "[e]ngaging in a course of conduct or repeatedly committing acts which harass or intimidate another person and which serve no legitimate purpose." WIS. STAT. § 813.125(1)(am)2. Conduct with a harassing or illegitimate purpose remains harassment even if it is accompanied by an additional, legitimate purpose. *Decker*, 355 Wis. 2d 800, ¶38. This is so because "intentionally harassing conduct can *never* serve a legitimate purpose." *Id.* (citing *Bachowski v. Salamone*, 139 Wis. 2d 397, 408, 407 N.W.2d 533 (1987)). "[I]ntent to harass" is a question of fact "inferred from the acts and statements of

5

the person, in view of the surrounding circumstances." *Welytok*, 312 Wis. 2d 435, ¶¶25-26 (citation omitted).

¶11 Reviewing the circumstances presented here, we conclude that the court did not erroneously exercise its discretion in ordering this injunction because it properly weighed McGinnis's conduct and drew appropriate inferences about McGinnis's intent. McGinnis could have chosen to file all of the lawsuits in one place, such as the county that both parties shared, but he instead chose to file them across four different states. These various venues include a state where the Petitioner had never been. Similarly, McGinnis chose not to consolidate the lawsuits and instead filed each individually one after the other. Nor could McGinnis provide any reason why he chose to sue the Petitioner in states where neither of them lived and where the Petitioner had never set foot, or his decision not to consolidate his cases.[7] Moreover, three of the lawsuits were repetitive, setting forth identical facts as their bases. The trial court could reasonably conclude that requiring responses to multiple lawsuits filed one after another in inappropriate venues was intended to harass, intimidate, and impose an undue burden on the Petitioner.

¶12 *Decker* is instructive here. In that case, a student caused persistent disruptions at university meetings after being prohibited from entering university property while he was suspended. *Decker*, 355 Wis. 2d 800, ¶40. The record established that the student also swore at and threatened a university chancellor in

---

[7] McGinnis's excuse that Wisconsin courts cannot interpret another state's contract is without merit, as this practice dates back to the nineteenth century. *Osborn v. Blackburn*, 78 Wis. 209, 210, 47 N.W. 175 (1890) ("There are many cases where the courts are bound to decide upon contracts according to the laws of other states ….").

a meeting, stabbed the chancellor's documents with a pen during a heated argument, and attempted to purchase a handgun immediately after police tried to serve him with a restraining order. *Id.* Decker maintained that his conduct had the legitimate purpose of protesting student fees and that WIS. STAT. § 813.125 provides that conduct rises to the level of "harassment" only if it "serves '*no* legitimate purpose.'" *Decker*, 355 Wis. 2d 800, ¶37 (emphasis added). Decker argued that his conduct was motivated by his desire to protest fees, and a harassment injunction could not impinge on his First Amendment free speech rights. *Id.*, ¶¶37, 43. The circuit court rejected Decker's position and the supreme court upheld the circuit court's decision, explaining that Decker's free speech rights were not absolute, and as such, his right to protest on UW property could be restricted, if the "purpose was even in part to harass," thereby making an injunction appropriate. *Id.*, ¶¶38, 45.

¶13     Applying *Decker* to the situation here, we conclude that the circuit court properly enjoined McGinnis from engaging in future litigation that is used, even in part, to harass the Petitioner. In addition to the evidence presented at the injunction hearing, the circuit court relied upon its own dealings with McGinnis in previous cases and his prior reprimands.[8] These facts taken together support the court's finding that McGinnis intended the myriad lawsuits against the Petitioner to harass or intimidate her, at least on some level. McGinnis "cannot shield his harassing conduct from regulation by labeling it" as serving a legitimate purpose.

---

[8] In 2016, McGinnis defended a paternity suit brought by the Petitioner for custody and child support. He filed so many motions pro se, despite being represented by counsel throughout, that the court ordered McGinnis to file an affidavit swearing, "I am aware of the prohibition for me to have any direct or indirect communications with any court official, or any court staff pertaining to my case as long as I am represented by counsel. This includes filing any motions or pleadings on my own, which I am aware I am not allowed to do."

*See id.*, ¶38. Under *Decker*, any additional, legitimate purpose underlying the nine lawsuits cannot rectify harassing conduct. *See id.* (if conduct was used even in part to harass, it can be enjoined despite having a coinciding legitimate purpose).

¶14 McGinnis also asserts that this order is unduly broad in violation of his constitutional rights. He argues that this order violates his right to access courts because he can no longer file "any lawsuit against Petitioner-Respondent no matter how legitimate his claim may be." Finally, McGinnis contends that this order's prior approval requirement unconstitutionally denies him procedural due process by unduly restricting his notice and opportunity to be heard. We disagree.

¶15 Like issuing an injunction at all, the scope of an injunction is also "within the sound discretion of the trial court." *Welytok*, 312 Wis. 2d 435, ¶¶23-24. "We may not overturn a discretionary determination that is demonstrably made and based upon the facts of record and the appropriate and applicable law." *Id.*, ¶24. However, "[i]njunctions … must be specific as to the prohibited acts and conduct in order for the person being enjoined to know what conduct must be avoided." *Id.* A court order limiting the right to sue is constitutional if it is narrowly constructed to properly balance the drain on taxpayer resources against the individual's right to sue. *Minniecheske v. Griesbach*, 161 Wis. 2d 743, 749, 468 N.W.2d 760 (Ct. App. 1991).

¶16 We conclude that the injunction requiring McGinnis to seek leave to sue the Petitioner is sufficiently narrow to withstand constitutional scrutiny. The right to access the courts "is neither absolute or unconditional." *Village of Tigerton v. Minniecheske*, 211 Wis. 2d 777, 785, 565 N.W.2d 586 (Ct. App. 1997). "We think this is particularly true where a litigant has been found to commence litigation for the purpose of harassment." *Puchner v. Hepperla*, 2001

WI App 50, ¶8, 241 Wis. 2d 545, 625 N.W.2d 609; *see also **State v. Casteel***, 2001 WI App 188, ¶26, 247 Wis. 2d 451, 634 N.W.2d 338 (A "threshold review of the merits is a sensible and constitutional means of dealing with a litigant intent on pressing frivolous litigation.") (citing ***In re Davis***, 878 F.2d 211, 212-13 (7th Cir. 1989)).

¶17 Requiring McGinnis to seek permission before suing the Petitioner is precisely the type of "threshold review" this court permits. *See **Casteel***, 247 Wis. 2d 451, ¶¶25-26 (upholding a filing restriction that required, among other things, a pre-appeal statement enumerating specific grounds for relief in order to curb "repetitively litigating the same matters"). The restriction here is narrowly tailored to the abuse because it does not prevent McGinnis from filing any and all claims; instead, the limited threshold review shifts the burden onto him to first show that any prospective litigation is properly filed in an appropriate venue, is not repetitive, and is not begun for the purpose of harassment. The circuit court specifically noted that McGinnis can still file his lawsuits so long as they are part of a legitimate course of conduct. This injunction properly achieves that goal.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.